**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Gracielo GARDEA CARRASCO, Sabino Gardea Carrasco and Jesus Carrasco Valdez, Defendants-Appellants.**

**No. 87–1223**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Oct. 6, 1987.

Robert R. Harris, El Paso, Tex., for defendants-appellants.

LeRoy Morgan Jahn, Asst. U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before RUBIN, REAVLEY, and HILL, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A jury in the western district of Texas convicted Gracielo Gardea Carrasco, Sabino Gardea Carrasco, and Jesus Carrasco Valdez of conspiracy to possess marijuana with an intent to distribute [1] and of possession of marijuana with an intent to distribute.[2] All three defendants challenge their convictions as resting on insufficient evidence. We affirm the convictions of Gracielo and Sabino but reverse Jesus's convictions.

I.

On December 30, 1986, Gracielo Gardea Carrasco (Gracielo) and Jesus Carrasco Valdez (Jesus) drove from Presidio, Texas, to the airport just outside of town. Jesus stayed in the car while Gracielo went into a house-trailer on the premises to talk to Charles Bennett, manager of the airport and pilot. Gracielo asked Bennett to trans-

---

1. 21 U.S.C. §§ 841(a)(1), 846 (1982).

2. 21 U.S.C. § 841(a)(1) (1982).

port three suitcases full of marijuana from Presidio to the airport by automobile and then to take the suitcases by plane to McCamey, Texas. Bennett had received a plane from Gracielo in return for Bennett's work for Gracielo's used equipment business and was using this in his business. Gracielo threatened that, if Bennett refused to transport the contraband, he would take back the airplane.

When Gracielo left the airport, Bennett telephoned United States Customs Investigator Gary Epps and told him about Gracielo's proposal. Epps instructed Bennett to cooperate with Gracielo and to report back.

On December 31, 1986, Gracielo returned to the airport, this time accompanied by his brother Sabino Gardea Carrasco (Sabino) as well as Jesus. Out of earshot of the others, Gracielo spoke to Bennett, renewing his request that Bennett take the marijuana from town to the airport, the part of the trip Gracielo considered most dangerous. Bennett refused, but he agreed that his wife, Elia Palma Holguin, and her niece would drive Holguin's pickup truck to town, lend it to the Carrascos, and return to the airport in one of their cars. Bennett later reported this plan to Epps.

As Gracielo asked, Holguin and her niece drove the truck to his house in Presidio and waited for him there. Five minutes later he arrived with Sabino and another man, not Jesus. Holguin and her niece followed Gracielo to a second house where he, Sabino, and another loaded three suitcases into the back of the truck. Gracielo told Sabino to drive the truck back to the airport, but Sabino refused. Gracielo then told Holguin and her niece to do it, and they complied. The Border Patrol stopped the truck on the way to the airport, identified the driver and passenger, and let them proceed.

When Holguin arrived at the airport, Bennett told her to leave the truck and the suitcases where they were and notified

Epps that the marijuana was at the airport. At approximately 1:00 p.m. a passenger arrived for a prearranged flight to Colorado, and Bennett left.

Ten minutes after Bennett's departure, Sabino and Jesus arrived at the airport. Sabino asked Holguin where Bennett was, and she told him that her husband had left for Colorado. Holguin testified that "they" then told her to radio Bennett to return to the airport, pick them up, and fly them to McCamey. She did not specify whether Sabino or Jesus made this request, but the jury might reasonably have inferred that both were present during the conversation. Holguin radioed her husband, and he returned. While Bennett was refueling, Sabino and Jesus carried the three suitcases from the pickup truck to the plane. As Bennett prepared the plane for the luggage, the Border Patrol arrived, followed by Epps. They arrested Sabino and Jesus and asked whether the two objected to a search of the suitcases. Sabino and Jesus said they did not object because the suitcases were not theirs. The officers opened the suitcases and found 142 pounds of marijuana.

Gracielo drove slowly past the airport while the arrests were taking place. Two officers followed his car, but it sped up and eluded them. Gracielo was arrested sometime later.

## II.

When a challenge is made to the sufficiency of the evidence supporting a conviction, this court must decide whether a rational trier of fact could have found that the evidence established guilt beyond a reasonable doubt.[3] We must view the evidence in the light most favorable to the verdict, accepting all credibility choices and reasonable inferences made by the jury.[4]

---

3. *United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), *aff'd on other grounds,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

4. *United States v. Nixon,* 816 F.2d 1022, 1029 (5th Cir.1987); *United States v. Bland,* 653 F.2d 989, 995 (5th Cir. Unit A 1981), *cert. denied,* 454 U.S. 1055, 102 S.Ct. 602, 70 L.Ed.2d 592 (1981).

The standard is the same whether the evidence is direct or circumstantial.[5]

The defendants argue first that the evidence is insufficient because based almost entirely on the testimony of two accomplices or government informers, Bennett and Holguin, whose stories were inconsistent and incredible. It is the sole province of the jury, as we have repeatedly held, to assess the weight of the evidence and the credibility of witnesses, resolving any inconsistencies in their testimony.[6] The jury obviously believed Bennett and Holguin despite the defense's attempts to discredit them. We cannot declare testimony incredible as a matter of law unless it is "so unbelievable on its face that it defies physical laws."[7] Bennett's and Holguin's testimony rises far above this standard, whether the witnesses are viewed as accomplices or government informers. A conviction may rest solely on the uncorroborated testimony of one accomplice if the testimony is not insubstantial on its face.[8] Here, the government presented both Bennett and Holguin and buttressed their testimony with that of four law enforcement officers involved in the surveillance and arrest of the defendants. We find none of the testimony unbelievable on its face.

The defendants next assert that the government failed to prove the conspiracy charge. To establish guilt of conspiracy, the government must prove beyond a reasonable doubt the existence of an agreement to accomplish an unlawful purpose, the defendants' knowledge of the conspiracy, and their voluntary participation in the conspiracy.[9] The government need not show any overt act in furtherance of the conspiracy[10] nor prove that each defendant knew every detail of the conspiracy but only that each knew the essentials. A defendant can escape conviction neither on the ground that he joined the conspiracy long after its inception nor because he played only a minor role in the plot.[11]

The evidence was more than sufficient to establish Gracielo's guilt. He initiated and maintained several discussions with Bennett concerning the transportation of the marijuana from Presidio to McCamey. He and Sabino led Holguin to the house where the suitcases were stored and helped load them into her pickup truck. He directed Sabino to drive the truck back to the airport and enlisted Holguin's services when Sabino refused. Gracielo drove slowly past the airport as the arrests were taking place, an action from which the jury might reasonably have inferred that he was "supervising" the loading of the contraband onto the plane. A rational jury might thus have found beyond a reasonable doubt that Gracielo engineered this conspiracy.

Sabino's nexus to the conspiracy was also clearly established. Sabino accompanied Gracielo to the airport once, went with him to the house where the marijuana was hidden, helped him load the suitcases into the pickup, returned to the airport to load them into the airplane, and intended to travel to McCamey with them. Most importantly, when Gracielo asked Sabino to drive the truck containing the suitcases full of marijuana to the airport, the segment of the trip considered most dangerous, he refused. Sabino might have refused because he knew what was in those suitcases and did not want to be caught with the marijua-

5. *Nixon,* 816 F.2d at 1029; *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

6. *United States v. Martin,* 790 F.2d 1215, 1219 (5th Cir.1986); *United States v. Davis,* 752 F.2d 963, 968 (5th Cir.1985).

7. *United States v. McKenzie,* 768 F.2d 602, 605 (5th Cir.1985), *cert. denied,* 474 U.S. 1086, 106 S.Ct. 861, 88 L.Ed.2d 900 (1986) (quoting *United States v. Lerma,* 657 F.2d 786, 789 (5th Cir. 1981), *cert. denied,* 455 U.S. 921, 102 S.Ct. 1279, 71 L.Ed.2d 463 (1982)).

8. *United States v. Moreno,* 649 F.2d 309, 312 (5th Cir. Unit A 1981).

9. *United States v. Williams-Hendricks,* 805 F.2d 496, 502 (5th Cir.1986); *United States v. Montemayor,* 703 F.2d 109, 115 (5th Cir.1983), *cert. denied,* 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983).

10. *Williams-Hendricks,* 805 F.2d at 502.

11. *Montemayor,* 703 F.2d at 115 (citing *United States v. Alvarez,* 625 F.2d 1196, 1198 (5th Cir. 1980) (en banc), *cert. denied,* 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981)).

 

na. Thus, the record adequately supports his knowledge of and voluntary participation in the conspiracy.

Jesus's connection with the conspiracy is, however, tenuous. He went along each time Gracielo drove to the airport to make arrangements with Bennett to transport the marijuana, but he was not privy to their conversations. Although Jesus took no part in loading the suitcases into the pickup truck, he did help Sabino unload them and carry them to the airplane after either Jesus or Sabino in Jesus's presence had requested that Bennett return to take them to McCamey. Moreover, two law enforcement officers testified that they spotted Gracielo at Jesus's house at various times on December 30 and 31. One of these officers said also that he saw Gracielo take three suitcases into Jesus's house on December 5, 1986, but the officer could not identify the suitcases as the same ones confiscated on December 31.

We find that a rational jury, considering all of this evidence together, could not have found beyond a reasonable doubt that Jesus knew of and voluntarily joined the conspiracy. No evidence, circumstantial or otherwise, establishes his knowledge of the conversations that took place out of his hearing, of the contents of the suitcases he helped carry to the airplane, or of the purpose of their transportation to McCamey. Neither his association with those involved in the conspiracy nor his presence at the airport before and during the arrests is sufficient to sustain a conspiracy conviction.[12]

Finally, the defendants challenge the evidentiary foundation of their convictions for possession of marijuana with intent to distribute. To establish this substantive offense, the government must prove beyond a reasonable doubt that the defendants knowingly possessed marijuana

and intended to distribute it.[13] Possession may be actual or constructive, may be joint among several defendants, and may be proved by direct or circumstantial evidence.[14] Constructive possession is "the knowing exercise of, or the knowing power or right to exercise, dominion and control over the proscribed substance."[15]

Although Gracielo was not caught with the suitcases full of marijuana in his hands, there was a reasonable basis for the jury to find that he knowingly exercised control over them. The evidence justified the conclusions that he knew where they were stashed, removed them from this hiding place, and made the arrangements for their transportation. That he wanted them flown to McCamey was evidence of his intent to distribute the marijuana, as was the amount, far more than could plausibly have been for personal consumption. The evidence also supported the conclusion that Sabino knew the location of the suitcases and their contents. When arrested, he had physical possession of them and was on his way to fly with them to McCamey. Jesus, too, had physical possession of the suitcases at the time of the arrest, but the prosecution failed to offer evidence proving beyond a reasonable doubt that he knew what they contained or why he was to accompany them to McCamey. In the absence of such proof, his conviction cannot stand.

For these reasons, we AFFIRM the convictions of Gracielo Gardea Carrasco and Sabino Gardea Carrasco and REVERSE the convictions of Jesus Carrasco Valdez.

---

**12.** *Williams-Hendricks,* 805 F.2d at 502–03; *United States v. White,* 569 F.2d 263, 268 (5th Cir.1978), *cert. denied,* 439 U.S. 848, 99 S.Ct. 148, 58 L.Ed.2d 149 (1978); *Bland,* 653 F.2d at 996–97.

**13.** *Williams-Hendricks,* 805 F.2d at 500; *United States v. Vergara,* 687 F.2d 57, 61 (5th Cir.1982).

**14.** *Vergara,* 687 F.2d at 61.

**15.** *Id.* at 61–62 (quoting *United States v. Glasgow,* 658 F.2d 1036, 1043 (5th Cir. Unit B 1981)).