# UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

---

No. 97-40197

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERTO VILLEGAS-RODRIGUEZ,
RAMON VILLEGAS-RODRIGUEZ,

Defendants-Appellants.

---

Appeals from the United States District Court
for the Southern District of Texas

---

March 24, 1999

Before KING, Chief Judge, POLITZ and BENAVIDES, Circuit Judges.

POLITZ, Circuit Judge:

Roberto and Ramon Villegas-Rodriguez appeal their convictions for conspiracy to possess with intent to distribute marihuana and possession with intent to distribute in excess of 100 kilograms of marihuana. For the reasons assigned, we affirm their convictions and sentences.

# BACKGROUND

On July 30, 1996, drug enforcement agents received information that marihuana was being stored at 1403 South Meadow in Laredo, Texas.[1] The agents began surveillance of the residence shortly before 3:00 p.m. that day. At approximately 4:00 p.m., Agent Jeff Newland observed a gray Monte Carlo automobile at the residence and identified Roberto Villegas as the driver. At 4:25 p.m., Newland observed a black Chevrolet Impala arrive at the residence. He identified the driver of that vehicle as Ramon Villegas.

Roberto Villegas then left the residence in the gray Monte Carlo approximately 30-40 minutes after arriving. The agents conducting surveillance of the house instructed a Laredo police officer, Sergeant Hector Garcia, to stop the vehicle. After Roberto Villegas ran a stop sign, Garcia stopped the Monte Carlo and issued a citation at 4:50 p.m. Roberto Villegas returned to the 1403 South Meadow residence around 6:17 p.m.

At approximately 6:30 p.m., Roberto Villegas backed the Monte Carlo out of the driveway and a blue BMW, driven by a Hispanic male, backed into the driveway. Roberto Villegas then drove the Monte Carlo back into the driveway.

---

[1] 1403 South Meadow was the home of Guadalupe Villegas, the mother of the defendants.

A man walked to the end of the driveway and stood there, looking up and down the street. Five minutes later, at 6:35 p.m., the Monte Carlo pulled out of the driveway and parked on the street as the BMW drove away.

Sergeant Garcia was instructed to pursue and stop the BMW. When Garcia activated his flashing lights the BMW "just took off" and led the police car in a chase that ended a short time later when the speeding BMW collided with a telephone pole. The driver of the BMW was identified as Ricardo Cardenas. As Garcia approached the BMW, he saw bundles, wrapped in clear cellophane and secured with brown packing tape. The contents were visible through the clear wrap and Garcia recognized the substance inside as marihuana. He also detected a strong odor of marihuana.[2] The police seized 326 pounds of marihuana from the BMW.[3]

Agent Nicolas Nanez then returned to the residence and obtained permission from Ramon Villegas to search a utility room. Nanez and Laredo police officer Andres Maldonado testified that they smelled a strong odor of marihuana. Maldonado added that marihuana had been in the room "in the recent past."

---

[2] In oral argument a question was raised whether the bundles were wrapped in transparent cellophane. The testimony of Officer Garcia and pictures of the bundles, which were filed in evidence, clearly reflect a transparent cellophane wrapping secured by brown packaging tape.

[3] Small bundles were wrapped together to make 15 large bundles.

Maldonado's drug dog alerted to several locations in the room and the officers found clear cellophane wrap and brown wrapping tape as was used on the bundles of marihuana.

Cardenas entered into a plea agreement under which he would provide testimony and in turn receive a sentencing recommendation. He testified that one month prior to the date of his arrest, Ramon Villegas asked him to find someone to transport marihuana from Laredo to San Antonio. On July 30, 1996, the date of the arrest, Ramon Villegas again called Cardenas seeking a driver. When Cardenas was unable to find a driver, he decided to use the blue BMW to transport the marihuana. He agreed to move the marihuana a short distance that day for $500.

At approximately 6:00 p.m., Cardenas met Ramon and Roberto Villegas at the 1403 South Meadow residence. Cardenas spoke only with Ramon Villegas; he had not met Roberto Villegas before and did not talk to him that day. According to Ramon Villegas' instructions, Cardenas then backed the BMW close to the house so they could load the marihuana into the car without being seen from the street. Ramon, Roberto, and Cardenas loaded the marihuana from the utility room into the BMW in about three minutes. After their arrest and while in jail, Cardenas refused Ramon Villegas' offer of $20,000 if Cardenas would accept responsibility for the events. Both Roberto and Ramon Villegas were charged with conspiracy to possess

4

with the intent to distribute marihuana in violation of 21 U.S.C. § 846 and with possession with the intent to distribute in excess of 100 kilograms of marihuana in violation of 21 U.S.C. § 841(b)(1)(B). The trial court denied motions for judgment of acquittal and the jury convicted the defendants on both counts. Ramon Villegas was sentenced to 97 months imprisonment and Roberto Villegas was sentenced to 63 months in prison. Both timely appealed.

## ANALYSIS

Ramon and Roberto Villegas both challenge the sufficiency of the evidence supporting their convictions. Ramon Villegas also contends that he received ineffective assistance of counsel because his attorney failed to object to Cardenas' testimony as violative of the federal bribery statute.

We review a claim of insufficiency of the evidence narrowly and affirm if a rational trier of fact could have found the evidence established the essential elements of guilt beyond a reasonable doubt.[4] The evidence is viewed in the light most favorable to the jury's verdict, accepting all reasonable inferences supportive of that verdict.[5]

---

[4] **United States v. Mmahat**, 106 F.3d 89 (5th Cir. 1997), *cert. denied*, 118 S. Ct. 200 (1998).

[5] **Id.**

The conviction for possession of marihuana with intent to distribute requires the knowing possession of the controlled substance with the intent to distribute.[6] Possession of a controlled substance may be actual or constructive, or joint among several defendants, and may be proved by direct or circumstantial evidence.[7]

A conviction for conspiracy requires proof: (1) of an agreement between two or more persons to violate the narcotics laws, (2) that each defendant knew of the conspiracy and intended to join it and, (3) that each defendant participated in the conspiracy.[8] A conspiracy may be inferred from circumstantial evidence and the government need not prove that each defendant knew of every detail of the conspiracy, only that each knew of its essentials.[9] Further, a defendant may be convicted on the uncorroborated testimony of a coconspirator who has accepted a plea bargain unless the coconspirator's testimony is incredible.[10] Mere presence at the crime scene or close association with the coconspirators, however, is not

---

[6] **United States v. Brown**, 29 F.3d 953 (5th Cir. 1994).

[7] **United States v. Rodriguez**, 15 F.3d 408 (5th Cir. 1994).

[8] **United States v. Puig-Infante**, 19 F.3d 929 (5th Cir. 1994).

[9] **United States v. Gardea Carrasco**, 830 F.2d 41 (5th Cir. 1987).

[10] **United States v. Bermea**, 30 F.3d 1539, 1552 (5th Cir. 1994) (holding that "[t]estimony is incredible as a matter of law only if it relates to facts that the witness could not possibly have observed or to events which could not have occurred under the laws of nature").

sufficient to support an inference of participation in the conspiracy.[11]

We find that the evidence was sufficient to support the possession with intent to distribute and conspiracy convictions of Ramon Villegas. Cardenas testified that Ramon Villegas contacted him to arrange the transportation of the marihuana, instructed him regarding the load and delivery of the drugs, and helped him load the marihuana into the BMW. Ramon Villegas also had the key to the utility room where the marijuana was stored. Based on this evidence, we find that Cardenas' testimony is not incredible and that, considering the testimony of the law enforcement officers, there was sufficient evidence in support of Ramon Villegas' conspiracy and possession with intent to distribute convictions.

As noted, Roberto Villegas also challenges the sufficiency of the evidence, contending that, at most, Cardenas' testimony proves that he was present at the scene of the crime and loaded the packages into the BMW. He maintains that Cardenas' testimony does not demonstrate that he knew the packages contained contraband or that he voluntarily participated in a drug conspiracy or transaction, especially considering Cardenas' statement that he did not know Roberto or have a conversation with him and only saw him for three minutes while loading the packages. Roberto further alleges that the evidence is not sufficient to support an

---

[11] **United States v. Maltos**, 985 F.2d 743 (5th Cir. 1992).

aiding and abetting conviction[12] and that his conduct is far less culpable than the conduct of the defendant in **United States v. Gardea Carrasco**,[13] a case in which we reversed a drug conspiracy conviction for insufficiency of the evidence.

In **Gardea Carrasco**, defendant Jesus Carrasco Valdez accompanied other defendants to the airport on two separate days where conversations about the transportation of marihuana occurred. Valdez, however, did not hear the conversations take place. On the second day, Valdez and a codefendant arrived at the airport. A witness testified that "they" told her to radio a pilot who was to transport the marihuana, but did not specify which defendant made the statement. Valdez and a codefendant then carried three suitcases containing the marihuana from a truck to a plane.[14]

The evidence also indicated that one of the primary organizers of the conspiracy had been at Valdez's home at various times on the two days in question and that 25 days earlier a codefendant took three suitcases into Valdez's house. Those suitcases, however, were not shown to be the same suitcases used to

---

[12] To prove aiding and abetting, the government must prove that the defendant became associated with, participated in, and in some way acted to further the possession and distribution of the drugs. **United States v. Chavez**, 947 F.2d 742 (5th Cir. 1991).

[13] 830 F.2d 41 (5th Cir. 1987).

[14] **Id.** at 42-43.

transport the marihuana.[15]  We reversed the convictions for conspiracy and possession with intent to distribute because there was no proof that Valdez was aware of the substance of the critical conversations, knew what was inside the suitcase, or knew why they were being transported.[16]

In response, the government contends that the facts in this case are more akin to those in **United States v. Pruneda-Gonzalez**,[17] in which we found the evidence sufficient to support the conviction of defendant Pruneda for conspiracy and possession with intent to distribute.  Therein, Pruneda met with defendants Hernandez, Pena, and Salazar at Salazar's house in the afternoon.  The conspiracy to possess marihuana was formed between Salazar and Hernandez in the morning of that same day.  While Salazar and Hernandez talked, Pruneda and Pena loaded empty boxes into a van and then departed.   Pruneda and another man returned the van to Salazar's house four hours later and  Pruneda admitted to Salazar that the van was loaded with 500 pounds of marihuana.  After payment for the drugs, Pruneda and the three codefendants left together in the same vehicle, following the

---

[15]  **Id**.

[16]  **Id.** at 45.

[17]  953 F.2d 190 (5th Cir. 1992).

van containing the drugs.[18]

We found that the evidence established that Pruneda had knowledge of the contents of the van and of the approximate quantity of marihuana, knowledge which the defendant in **Gardea Carrasco** did not possess, and we distinguished **Gardea Carrasco** because the events in that case took place over two separate days, rather than in a single day of activity. We also found that a  reasonable inference could be drawn that the three defendants would not have permitted Pruneda to accompany them and perform tasks vital to the success of the crimes within so close a time frame if Pruneda did not have knowledge of and intentionally participate in the criminal venture.[19]

Similarly, the government maintains that the evidence is sufficient in the instant case to support the conviction of Roberto Villegas because Cardenas and Ramon Villegas would not have allowed an innocent bystander to participate in an act vital to the successful completion of the conspiracy and because the criminal activities took place in a concentrated period of time. Moreover, the government contends that the evidence that the bundles in the BMW emanated a strong odor of marihuana, that the utility room contained a strong odor of marihuana, and that

---

[18]  **Id.** at 196.

[19]  **Id.** at 196-97.

Officer Maldonado concluded that marihuana had been in the room "in the recent past" could lead a reasonable jury to believe that Roberto Villegas would have been able to detect the odor himself and know that he was helping to load contraband into the BMW. The government also asserts that the quick and surreptitious loading of the aromatic bundles into the BMW, rather than into a garbage truck, provides further support for the inference that Roberto Villegas knew the bundles contained contraband.

Although causative of this panel's measured and thoughtful consideration, we must finally find and conclude that the evidence in the record sufficiently supports the jury's verdict. Roberto Villegas met his brother at their mother's house, moved a vehicle to permit Cardenas' BMW to back into the driveway, returned the vehicle to block the driveway, aided in loading 15 odoriferous bundles into the BMW, bundles which contained readily identifiable marihuana wrapped in a transparent cellophane, from a room apparently smelling heavily of marihuana, and then immediately moved the vehicle again to allow the BMW to leave promptly after the loading was completed. That Cardenas and Roberto did not discuss the contents of the packages, and that the loading was quickly done does not suffice to render naught the jury's verdict. We are not prepared to conclude that the jury reversibly erred in finding Roberto Villegas guilty as charged.

11

Finally, Ramon Villegas contends that his attorney provided ineffective assistance of counsel because he did not move to suppress Cardenas' testimony as being in violation of 18 U.S.C. § 201(c) and **United States v. Singleton**.[20] In **Singleton**, a panel opinion which now has been reversed by the *en banc* court, the panel found that a plea agreement offering a witness leniency in exchange for testimony violated 18 U.S.C. § 201(c), the federal bribery statute. Recently, we rejected the **Singleton** panel's rationale and ruled that a plea agreement promising leniency in exchange for testimony did not violate § 201(c).[21]

We do not review a claim of ineffective assistance of counsel on direct appeal unless the district court has first addressed it[22] or unless the record is sufficiently developed to allow us to evaluate the claim on its merits.[23] Ramon Villegas' claim of ineffective assistance of counsel is raised for the first time on appeal, there was no hearing thereon this claim in the district court, and therefore no findings of fact as to counsel's failure to object to the testimony at trial.

---

[20] 144 F.3d 1343 (10th Cir. 1998), *overruled by* **United States v. Singleton**, 165 F.3d 1297(10th Cir. 1999) (en banc).

[21] **United States v. Haese**, 162 F.3d 359 (5th Cir. 1998); **United States v. Webster**, 162 F.3d 308 (5th Cir. 1998).

[22] **United States v. Rosalez-Orozco**, 8 F.3d 198 (5th Cir. 1993).

[23] **United States v. Bounds**, 943 F.2d 541 (5th Cir. 1991).

Normally, the appropriate mechanism for raising this claim would be a habeas corpus proceeding pursuant to 28 U.S.C. § 2255.[24] In this instance, however, the record is sufficiently developed as to the merits of the claim and no further fact finding is necessary. Our recent decisions make manifest that the testimony of a witness who has entered into a plea agreement does not violate § 201(c). That counsel did not object to this testimony does not constitute ineffective assistance of counsel.

## CONCLUSION

We conclude and hold that the evidence is sufficient to support the convictions of both defendants on both charges and, accordingly, the convictions and sentences of Roberto Villegas-Rodriguez and Ramon Villegas-Rodriguez are AFFIRMED.

---

[24] *See* **United States v. Ugalde**, 861 F.2d 802 (5th Cir. 1988).