IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————————

No. 98-20419

———————————————

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

versus

ENRIQUE CASTIO MARTINEZ; MANUEL
SILVESTRE LOISZNER; AND LUIS
ARROCHA,

                                        Defendants-Appellants

———————————————

Appeals from the United States District Court
for the Southern District of Texas

———————————————
September 28, 1999

Before REYNALDO G. GARZA, HIGGINBOTHAM, and DAVIS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

     Luis Arrocha, Manuel Loiszner, and Enrique Martinez appeal their convictions following jury trial for conspiracy and possession with intent to distribute cocaine.  Appellants Arrocha and Loiszner argue that there was insufficient evidence to support their convictions.  All three appellants argue that the district court's instruction on flight was an abuse of discretion.  We affirm the convictions.

I.

The government based its charges on facts gathered in a sting operation. In 1995, an undercover agent began negotiating with a Columbian drug dealer for a shipment of cocaine. In 1997, the dealer shipped cocaine to the agent, and they made plans to have the drugs delivered to the dealer's associate in Houston, Gustavo Aizpurua.

To arrange delivery, the undercover agent met Aizpurua and Martinez at a restaurant. Over lunch, the three men discussed the delivery of 84 kilograms of the cocaine. Martinez told the agent the location of the delivery site and how the agent should identify and park the load car. Arrocha had arrived at the restaurant with Aizpurua but did not meet the agent. After the meeting with the agent, Aizpurua and Martinez met with Arrocha, Loiszner, and another suspect in the restaurant's parking lot.

Arrocha and Loiszner were also present at the pick-up site when another DEA agent delivered the load car to the appointed parking lot. The appellants and other suspects drove up and down the aisles of the lot. Loiszner then entered the load car and drove to a Houston residence, followed by the other vehicle. The DEA agents had included a tracking device in one of the boxes of sham cocaine that would signal when the box was opened, and after the cars had arrived at the house, the tracking device was activated.

Several agents, wearing vests and helmets marked "POLICE" and "DEA," approached the house as one agent yelled, "Police!" As the

2

police approached, Arrocha was showing the tracking device to Martinez, Loiszner, and others in the living room. When the police announced their presence, Arrocha and Martinez ran to the rear of the house. Martinez hid in a garage closet. The agents found Arrocha, Loiszner, and two other suspects in the living room and located Martinez in the closet. The house smelled strongly of acetone, an odor similar to that of cocaine, and some of the government's sham cocaine was visible from the living room.

Government agents recovered additional evidence from Aizpurua's car and hotel room, including a business card for "Luis D'Angelo" and airplane tickets issued to Aizpurua and "Luis D'Angelo" for a recent flight to Houston. Arrocha's full surname is Arrocha D'Angelo. Hotel records further linked Aizpurua and Arrocha: the records showed that Aizpurua had reserved and paid for the adjoining room for Arrocha, and that Arrocha had given the hotel the same Miami address Aizpurua used.

## II.

Loiszner and Arrocha argue that the evidence was insufficient to support the jury's verdict. The sufficiency of the evidence is reviewed in the light most favorable to the jury verdict. It is considered sufficient if a rational trier of fact could have found that the evidence established guilt beyond a reasonable doubt. See United States v. Resio-Trejo, 45 F.3d 907, 910-11 (5th Cir. 1995).

In order to prove conspiracy to possess with the intent to distribute cocaine, the Government must prove three elements: (1)

3

the existence of an agreement, (2) knowledge of and intent to join the agreement, and (3) voluntary participation in the agreement. See United States v. Mergerson, 4 F.3d 337, 341 (5th Cir. 1993). Association or presence can be sufficient to prove knowing participation in the agreement if combined with other supporting circumstantial evidence. See United States v. Brito, 136 F.3d 397, 409 (5th Cir. 1998). A jury may find knowledgeable, voluntary participation from presence when it would be unreasonable for anyone other than a knowledgeable participant to be present. See United States v. Paul, 142 F.3d 836, 840 (5th Cir. 1998).

To establish possession with intent to distribute, the Government must prove that the defendant knowingly possessed the cocaine with the intent to distribute the drugs. See United States v. Quiroz-Hernandez, 48 F.3d 858, 868 (5th Cir. 1995). Possession can be actual or constructive, joint among defendants, and established by direct or circumstantial evidence. See id.

A.

Arrocha argues that the Government failed to establish the knowledge element of either charge against him. Specifically, Arrocha asserts that there was insufficient evidence to demonstrate his knowledge of the plan to deliver drugs or of the presence of drugs at the stash house.

Ample evidence supports the jury's finding that Arrocha knew of the delivery plan and of the presence of cocaine. First, Arrocha was present during three significant moments of the

4

conspiracy: the restaurant meeting, the pick-up, and the stash house meeting. Second, evidence found at Arrocha's hotel room and in Aizpurua's possession suggested that Aizpurua and Arrocha were working together. They had recently traveled together, Aizpurua arranged and paid for Arrocha's accommodations during his stay in Houston, and Arrocha gave the same Miami address that Aizpurua had used. Third, evidence of cocaine was evident in the living room where police arrested Arrocha. Moreover, Arrocha showed the others the tracking device which had been inside one of the boxes of cocaine.

Taken together, there was sufficient evidence from which a jury could reasonably infer that Arrocha knew of the conspiracy and of the presence of drugs at the Carthage residence.

B.

Loiszner argues that the Government failed to show that he had knowledge of the conspiracy or of the presence of cocaine. Loiszner testified that other defendants told him that a friend needed the car taken to his house. Loiszner claimed that he did not smell any acetone in the car. On appeal, he argues that the government presented less evidence of knowledge than in United States v. Gardea Carrasco, 830 F.2d 41 (5th Cir. 1987), in which the court overturned the appellant's conviction based on insufficient evidence.

In Gardea Carrasco, the defendant accompanied two other defendants on automobile rides to the airport over two days. At

5

the airport, the defendant waited in the car while the other defendants arranged the transport of a shipment of marijuana. On the day of the transport, the defendant helped load suitcases containing the marijuana into an airplane. The court held that the evidence was insufficient to demonstrate the defendant's knowledge of the other defendants' dealings or of the presence of contraband in the suitcases. See Gardea Carrasco, 830 F.2d at 45.

We recently distinguished Gardea Carrasco in United States v. Villegas-Rodriguez, 171 F.3d 224 (5th Cir. 1999). In that case, there was no evidence that the defendant had conversations about the drug transport. The defendant helped load a car with packages of marijuana stored in a house. His tasks included moving a vehicle so that it would block the visibility of the load car and carrying the drugs, apparently wrapped in transparent cellophane, from a room in the house that smelled strongly of marijuana. The court held the evidence was sufficient to support the defendant's conviction. Villegas-Rodriguez, 171 F.3d at 229-30.

Loiszner's case presents facts more akin to Villegas-Rodriguez than to Gardea Carrasco. Unlike the events in Gardea Carrasco, where there would have been little risk from having an innocent person along for the ride, here Aizpurua and the other co-conspirators trusted Loiszner, alone, to transport cocaine valued at over $1 million. As in Villegas-Rodriguez, Loiszner was in a room where one could see and smell the drugs. Loiszner's presence at the three crucial moments of the conspiracy gives rise to an

inference of knowledge similar to that of the participation by the Villegas-Rodriguez defendant. Considering the collection of circumstances surrounding Loiszner, a rational trier of fact could have found that the evidence established guilt beyond a reasonable doubt.

                                III.

Martinez, Arrocha, and Loiszner challenge the district court's instruction on flight. The district court instructed the jury that evidence of flight could reflect a consciousness of guilt. We review a challenge to jury instructions by determining whether the court's charge, as a whole, correctly states the law and clearly instructs jurors as to the principles of law applicable to the factual issues confronting them. United States v. Stacey, 896 F.2d 75, 77 (5th Cir. 1990).

Evidence of an accused's flight is generally admissible as tending to establish guilt. See United States v. Williams, 775 F.2d 1295, 1300 (5th Cir. 1985). A flight instruction is proper when the evidence supports four inferences: 1) the defendant's conduct constituted flight; 2) the defendant's flight was the result of consciousness of guilt; 3) the defendant's guilt related to the crime with which he was charged; and, 4) the defendant felt guilty about the crime charged because he, in fact, committed the crime. See United States v. Murphy, 996 F.2d 94, 97 (5th Cir. 1993). Harmless error applies. See United States v. Barnhart, 889 F.2d 1374, 1379 (5th Cir. 1989).

7

Martinez challenges the first and second inferences necessary to support a flight instruction. First, Martinez suggests that because he hid in a closet, he did not flee. Although hiding in a closet may not be the standard method of escape, it still can constitute flight where, as in this case, the cornered defendant was attempting to elude capture.

Second, Martinez argues that his flight was not the result of consciousness of guilt. Martinez contends that his flight could have stemmed from a fear of thugs or of arrest on immigration charges. The agents, however, wore clothing marked POLICE and DEA and shouted, "Police!" as they entered the house. That notice provided an adequate factual basis to infer that Martinez' flight stemmed from a consciousness of guilt.

Arrocha argues that his conduct did not constitute flight. Although Arrocha ran around the house when the agents approached, by the time they entered the house, Arrocha had returned to the living room. Given this fact, the district court erred in giving a flight instruction as to Arrocha. The error was harmless, however, in light of the other evidence against Arrocha.

As to Loiszner, the government did not ask the jury to draw any inference of flight. The district court was not required to advise the jury that the flight instruction did not apply to Loiszner. As the government presented no evidence of flight by Loiszner, the jury had no basis on which to draw an improper inference.

8

## CONCLUSION

We hold that the evidence is sufficient to support the convictions of Arrocha and Loiszner on both charges and that the error in giving a flight instruction as to Arrocha was harmless. AFFIRMED.