**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 02-50253

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE FEDERICO GOMEZ,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

January 29, 2003

Before GARWOOD, JONES, and STEWART, Circuit Judges.

PER CURIAM:[*]

In January 2001, Jose Gomez ("Gomez") was convicted by a jury for conspiring to possess over five kilograms of cocaine in violation of 21 U.S.C. §§ 841 and 846. Gomez now appeals arguing that the evidence was insufficient to support his conviction. For the reasons that follow, we affirm.

---

[*] Pursuant to 5ᵀᴴ Cɪʀ. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ Cɪʀ. R. 47.5.4.

Factual and Procedural Background

In August 2000, confidential informant, Martin Chavira ("Chavira"), was working with the Federal Bureau of Investigation ("FBI"). Chavira had a conversation with some individuals in Mexico setting up a cocaine deal. In this conversation, Chavira was instructed to call a man named "Tonio" to pick up a part of a load of cocaine that was going to be transported that day from El Paso to Chicago or New York. Chavira called Antonio[1] who instructed him to go to Love's Truck Stop ("Love's") where he would be met by someone in a red vehicle. Chavira did as instructed and was met at Love's by the Defendant, Gomez in a red Chevrolet Blazer. The FBI observed that Gomez took Chavira's keys to his pick-up truck, left Chavira and the red Blazer at Love's, and drove to JAM Enterprises. Although there was no direct evidence to establish ownership, the Government deduced that Gomez and his two brothers owned JAM Enterprises.[2] At JAM Enterprises, Gomez parked next to a car and transferred three cardboard boxes from the car to the bed of Chavira's pick-up truck. Gomez then returned to Love's, returned the keys to Chavira, and drove away.

The three cardboard boxes contained approximately 58 kilograms of cocaine worth approximately $1,160,000. Chavira drove the pick-up truck with the three cardboard boxes to Petro's Truck Stop to meet a tractor-trailer driver, Alberto Reyes ("Reyes"). Reyes was concerned that the odor of the cocaine would be detected by drug detection dogs and instructed Chavira to re-wrap the cocaine to try to mask the smell.[3] The FBI then took possession of that cocaine as well as 42

---

[1]The Government later learned that "Tonio" was short for Antonio

[2]The Government contends that JAM stood for the first initials of the three Gomez brothers: Jose, Antonio and Mario.

[3]Reyes ultimately did not transport the cocaine because it would not have fit into the concealed compartments in the tractor-trailor.

2

kilograms of cocaine obtained elsewhere, and completed a controlled delivery to Chicago after which several persons were arrested.

## Discussion

This Court reviews an insufficiency of the evidence claim in the light most favorable to the Government. United States v. Quiroz-Hernandez, 48 F.3d 858, 865 (5th Cir. 1995). The Court reviews all evidence, direct and circumstantial, to determine "whether the jury could reasonably, logically and legally infer that the defendant was guilty beyond a reasonable doubt." Id. "The evidence does not need to exclude every reasonable hypothesis of innocence; the jury is free to choose among reasonable interpretations of the evidence." United States v. Perrien, 274 F.3d 936, 939-940 (5th Cir. 2001). A sufficiency of the evidence review is necessarily fact specific and the Court must consider the totality of the circumstances.

To establish a drug conspiracy under 21 U.S.C. §§ 841(a)(1) and 846, the Government must prove beyond a reasonable doubt that an agreement existed, and that the defendant knew and voluntarily participated in it. United States v. Gallo, 927 F.2d 815, 820 (5th Cir. 1991). The jury can infer a conspiracy from association or presence, along with other circumstantial evidence, "but mere presence at the scene or a close association with the conspirators, without more, is an insufficient basis for inferring participation." United States v. Ornelas-Rodriguez, 12 F.3d 1339, 1345 (5th Cir. 1994); see United States v. Martinez, 190 F.3d 673, 676 (5th Cir. 1999).

Gomez argues that there was insufficient evidence to establish that he was a knowing and willful member of the conspiracy. Instead, he advances that he was merely present at the scene of the event. The Government counters that the evidence establishes more than mere presence. In particular, the Government contends that the sum of the following evidence was sufficient to prove that Gomez

3

was a knowing and willing participant in the conspiracy: (1) Gomez took the vehicle from Chavira; (2) handled and loaded the boxes of cocaine; (3) Gomez returned the vehicle to Chavira; and (4) the cocaine had an odor before it was rewrapped. The Government contends that the jury could also infer knowing participation in the conspiracy from the large amount of the cocaine and its value.

The Government contends that Gomez's control of Chivara's vehicle supports an inference of willing participation in the conspiracy. This Court has determined that in the totality of the circumstances, control of a vehicle involved in drug trafficking supports a conviction of conspiracy. See United States v. Quiroz-Hernandez, 48 F.3d 858, 865 (5th Cir. 1995) ("The jurors could infer [the defendant's] 'power to control' the vehicle by asking his cousin to drive a van, that had the keys in the ignition and which contained thousands of dollars of cocaine, from an established stash house."); United States v. Gallo, 927 F.2d 815, 821 (5th Cir. 1991) ("The Government established [the defendant]'s knowledge of the contents of the box recovered from his car by reasonable inferences drawn from his control over the box and his inconsistent statements disclaiming the knowledge of how the box got into his car."). The evidence of Gomez's sole control over Chavira's truck in this case is as strong as the evidence presented in Quiroz-Hernandez and Gallo. In this case, Gomez took the pickup truck from Chavira, drove it to JAM Enterprises, loaded three boxes on to the truck, and returned the pickup to Chavira.

The Government also contends that the jury could have inferred knowledge and voluntary participation in the conspiracy from the large amount of cocaine and its value. This Court has concluded that the owner of a large amount of drugs most likely would not entrust them to an unknowing member of the conspiracy. See United States v. Martinez-Moncivais, 14 F.3d 1030, 1035 (5th Cir. 1994) ("[R]easonable jurors could conclude that [the owner of the drugs] would not have

4

entrusted millions of dollars in each truckload of drugs to an unknowing, innocent driver."); Gallo, 927 F.2d at 821 (explaining that the jury could have inferred Gallo's knowledge of the conspiracy because "the evidence that Gallo was solely entrusted with a large portion of the proceeds of the drug trafficking enterprise establishes his familiarity with, or high level of participation in, that enterprise"). In this case the Government observed Gomez handling and loading three cardboard boxes containing 58 kilograms of cocaine worth approximately $1,160,000. Similar to the rationale advanced by the Court in Martinez-Moncvais and Gallo, the owner of the cocaine most likely would not have entrusted an unknowing participant with handling and transporting such a large quantity of valuable drugs.

The Government also relies on evidence that the cocaine may have emitted an odor based on Reyes' concern that the cocaine would be detected by drug-sniffing dogs. Although this evidence alone may not have yielded an inference of knowing participation in the conspiracy, it is one factor among several from which the jury could make such an inference. See e.g., United States v. Garcia, 86 F.3d, 394, 399 (5th Cir. 1996) (explaining that along with the evidence that there was a chemical odor coming from the cocaine, the defendant lived at the residence where the police found cocaine and that the defendant's car rode lower after he left the residence supported the inference that the car was loaded with cocaine while parked there); United States v. Villegas-Rodriguez, 171 F.3d 224, 230 (5th Cir. 1994) (explaining that the marijuana not only presented an odor, but was also wrapped in clear wrapping).

Conclusion

5

Given the totality of the circumstances presented in this case, the jury may have reasonably inferred from the evidence that Gomez was a knowing and willing participant in the conspiracy. Accordingly, we affirm Gomez's conviction. AFFIRM.