# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 22, 2009

Charles R. Fulbruge III
Clerk

No. 08-40218

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

GREGORY KIRK SHAW, also known as Gregory Kirk Shaw, Jr

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:06-CR-196

Before BARKSDALE, DeMOSS, and STEWART, Circuit Judges.

PER CURIAM:[*]

Gregory Kirk Shaw ("Shaw") was convicted by a jury of one count of conspiracy to manufacture, distribute, or possess with intent to distribute ecstasy pills and marijuana and one count of using a firearm in furtherance of the conspiracy. Shaw challenges the sufficiency of the evidence of the jury's findings as to the drug quantities, the district court's denial of his motion for judgment of acquittal, and the district court's denial of a motion for a mistrial based upon a witness's testimony about matters excluded by pretrial orders. We

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

AFFIRM in part and REVERSE and REMAND in part for proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL HISTORY

On August 10, 2006, a federal grand jury returned an indictment charging Shaw and three other individuals with one count of conspiracy to distribute or possess with intent to distribute or dispense 3,4-methylenedioxy-methamphetamine ("ecstasy") and marijuana, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. Shaw was arrested on January 11, 2007, at an apartment leased by his girlfriend, Karina Langham ("Langham"), in Dallas, Texas. Shaw was immediately taken out of the apartment and transported to Sherman, Texas. Meanwhile, Langham gave consent to search the apartment. The police recovered a firearm on top of the television, next to a bag of powder cocaine; found crack cocaine in a woman's boot; found 78.8 grams of marijuana in the freezer; and found remnants of marijuana cigarettes in an ashtray on a coffee table in the living room.

On February 15, 2007, the grand jury returned a superseding indictment. Count one of the superseding indictment charged Shaw with conspiring to distribute or possess with the intent to distribute or dispense ecstasy, less than 50 kilograms of marijuana, approximately 13.8 grams of cocaine, and approximately 7.5 grams of cocaine base, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. Count two charged Shaw with using, possessing, and carrying a firearm during and in relation to and in furtherance of the drug trafficking crime outlined in count one, in violation of 18 U.S.C. § 924(c)(1).

On July 23, 2007, Shaw's jury trial began, and the following evidence was presented. On April 8, 2004, Sherman Police Department ("SPD") Patrol Sergeant Stephen Dean ("Dean") instructed a confidential informant, Lutina Sommers ("Sommers"), to make a controlled purchase of ecstasy. Sommers acted as a confidential informant for the SPD for several years. While in Dean's

presence, Sommers called Brittney Posey ("Posey") in an attempt to purchase ecstasy. Posey did not answer his phone, and Sommers then called Derrick Nelson ("Nelson"). Nelson told Sommers that he did not have any ecstasy, but handed his phone to Shaw who agreed to sell Sommers twenty ecstasy tablets for $300. Shaw and Sommers arranged to meet at 711 Cleveland Street in Sherman.

Before the meeting, the SPD outfitted Sommers with an audio/video recorder and searched her to ensure that she did not possess any narcotics prior to meeting with Shaw. At trial, Sommers testified that after she met Shaw at the Cleveland Street address, he entered her vehicle and gave her twenty tablets in exchange for $300. Shaw also gave Sommers his cell phone number and told her to call him. Sommers testified that she understood this to mean she should call him for future drug purchases. SPD Sergeant Jason Jeffcoat ("Jeffcoat") witnessed the transaction and videotaped Shaw exiting his vehicle, approaching Sommers's vehicle, and then returning to his vehicle. Jeffcoat noted that Shaw's vehicle was driven by Nelson, and Shaw got out of the passenger seat. After the meeting, Sommers then turned the twenty tablets over to Dean. Both parties stipulated at trial that the twenty ecstasy tablets contained 4.9 grams of methamphetamine and 3,4-methylenedioxy-methamphetamine.

Posey, acting as a cooperating witness, also testified at Shaw's trial. In 1998, Posey started purchasing large quantities of marijuana from an individual in Dallas and would then transport it to the Sherman area. In 2002, Posey began purchasing ecstasy in addition to the marijuana. In 2003, Posey started dealing with Shaw and supplied him with one to two pounds of marijuana and fifty tablets of ecstasy per week through either the end of 2004 or the beginning of 2005. Posey would "front" Shaw the drugs and received payment after Shaw completed his sales. Posey sold the drugs to Shaw for the same amount he purchased them for in Dallas, thereby making no profit on the drugs he sold to

Shaw. Posey had similar arrangements with Nelson and an individual named Sterlin Blanton ("Blanton"). Posey testified that he stopped distributing narcotics in 2005 after suffering from anxiety attacks, and that he had no further contact with Shaw after Posey ceased selling narcotics. At the time Posey testified, he had been incarcerated since 2006 for an unrelated offense.[1]

Drug Enforcement Administration Special Agent Benjamin Vic Routh ("Routh") testified at Shaw's trial as an expert witness. Routh explained that in his expert opinion, people that distribute narcotics generally carry firearms to protect themselves and the proceeds of drug sales. Routh also testified that the marijuana found in the freezer was packaged for "distribution" and was not for personal use.

At the close of evidence, Shaw moved for judgment of acquittal. The district court granted the motion as it related to the cocaine and the cocaine base, ruling that the Government failed to present evidence of a conspiracy as it related to those drugs. The court denied the motion as it related to the marijuana found in the apartment, count one, and count two of the indictment, relating to the firearm. The jury found Shaw guilty of conspiracy, count one, and he was held responsible for 88 pounds of marijuana and 4400 tablets of ecstasy. Shaw was also found guilty of count two, possessing a firearm in furtherance of a drug trafficking crime. Shaw appeals.

## II. DISCUSSION

### A. Sufficiency of the Evidence of the Drug Quantities

Shaw does not challenge his conviction under count one for conspiracy, but seeks only to overturn the jury's special findings as to the drug quantities involved. Shaw argues that the Government failed to introduce sufficient evidence for the jury to find him responsible for 88 pounds of marijuana and

---

[1] Posey also testified that Nelson and Blanton were incarcerated in 2006 and remained incarcerated through the date of Shaw's trial.

4400 tablets of ecstasy beyond a reasonable doubt. We disagree; there was sufficient evidence presented to support the jury's special findings.

### 1. Standard of Review

We have explained that

> [o]ur review of the sufficiency of the evidence is "highly deferential to the verdict." *United States v. Harris*, 293 F.3d 863, 869 (5th Cir. 2002). The court asks "'whether the evidence, when reviewed in the light most favorable to the government with all reasonable inferences and credibility choices made in support of a conviction, allows a rational fact finder to find every element of the offense beyond a reasonable doubt.'" *Id.* (quoting *United States v. Asibor*, 109 F.3d 1023, 1030 (5th Cir. 1997)). Thus, our inquiry is "limited to whether the jury's verdict was reasonable, not whether we believe it to be correct." *United States v. Williams*, 264 F.3d 561, 576 (5th Cir. 2001).

*United States v. Gulley*, 526 F.3d 809, 816 (5th Cir.), *cert. denied*, 129 S. Ct. 159 (2008).

### 2. Analysis

Posey testified that he provided Shaw with one to two pounds of marijuana and fifty tablets of ecstasy a week from 2003 through either the end of 2004 or early 2005. A jury may choose among reasonable constructions of the evidence, which "need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *United States v. Ferguson*, 211 F.3d 878, 882 (5th Cir. 2000). A co-conspirator's uncorroborated testimony may sustain a guilty verdict, even when the co-conspirator has accepted a plea bargain, unless it is "incredible." *United States v. Villegas-Rodriguez*, 171 F.3d 224, 228 (5th Cir. 1999). As a matter of law, testimony is incredible if it "relates to facts that the witness could not possibl[y] have observed or to events which could not have occurred under the laws of nature." *United States v. Bermea*, 30 F.3d 1539, 1552 (5th Cir. 1994) (citation omitted).

Based on Shaw's conviction, the jury obviously credited Posey's testimony and calculated the drug quantities accordingly. The jury found Shaw responsible for 4400 tablets of ecstasy, which based on Posey's testimony amounted to eighty-eight weeks worth of product. In addition, the jury found Shaw responsible for eighty-eight pounds of marijuana–again eighty-eight weeks worth of product.[2] Based on the testimony given at trial, the jury's determination was not "incredible." Posey, Shaw's supplier, testified only to events he personally observed.

Shaw relies heavily on the argument that Posey's testimony was "incredible" because "he testified that he would front the drugs to [Shaw] for the price he paid for it and that he didn't make any profit from the drugs he allegedly gave to [Shaw]." Shaw concludes, therefore, that the facts as Posey recounted them "clearly def[y] the laws of nature" because "the alleged leader of the conspiracy didn't make any profit." The Government correctly explains that "Shaw appears to confuse 'the laws of nature' with 'human nature.'" Posey's testimony is entirely possible "under the laws of nature." Our caselaw explains that "laws of nature" refers to facts or events that are impossible in a physical sense; not merely unlikely due to human nature. *See United States v. Lindell*, 881 F.2d 1313, 1322 (5th Cir. 1989) ("Only when testimony is so unbelievable on its face that it defies physical laws should the court intervene and declare it incredible as a matter of law.") (citation omitted). Furthermore, conspirators sometimes "front" drugs to one another. *See, e.g.*, *United States v. Tremelling*, 43 F.3d 148, 151 (5th Cir. 1995); *see also United States v. Bender*, 539 F.3d 449, 454 (7th Cir. 2008) ("[S]elling drugs on credit is especially indicative of a

---

[2] We note that the jury did not appear to include in its calculation the marijuana found in the Dallas apartment when Shaw was arrested, thus we find the jury's determination of drug quantities to be reasonable even though the district court erred in allowing the jury to consider the marijuana found in the Dallas apartment. *See* discussion *infra* Part II.B.2.

conspiracy because it gives the seller a stake in the buyer's successful resale of the drugs."). Even if Shaw paid Posey for the drugs at the "wholesale" price, Shaw sold the drugs at street prices, generating a greater volume of sales, and assisting the conspiracy as a whole.

Shaw also notes that Posey was previously convicted of aggravated perjury. The jury learned of this and still believed his testimony. A rational jury could have found Posey credible. *See United States v. Ivey*, 949 F.2d 759, 767 (5th Cir. 1991) ("It is the sole province of the jury, and not within the power of this Court, to weigh conflicting evidence and evaluate the credibility of witnesses.") (citations omitted). Shaw also finds it dubious that the SPD and Sommers only made one controlled purchase from Shaw. He argues that the evidence links him solely to the twenty tablets of ecstasy he sold to Sommers. However, under the applicable standard of review, Posey's testimony supports the jury's findings. Moreover, Shaw does not contest that the conspiracy was responsible for the drug amounts described by Posey—quantities far above those the jury attributed to Shaw. As a member of the conspiracy, Shaw is criminally liable for all drugs attributable to the conspiracy, even if he did not personally see, handle, or sell them. *See United States v. Turner*, 319 F.3d 716, 722-23 (5th Cir. 2003). Therefore, there is sufficient evidence to sustain the jury's findings as to the quantities of drugs for which Shaw is responsible.

The jury is free to choose among reasonable constructions of the evidence, and it did so here. We affirm the jury's determination as to drug quantities.

## B. Marijuana and Firearm Found in the Dallas Apartment

Shaw argues that the district court erred when it denied Shaw's motion for judgment of acquittal as it related to the marijuana found in the Dallas apartment and count two[3] of the indictment. The Government successfully

---

[3] To convict Shaw of possessing a firearm in furtherance of a drug trafficking crime, the Government was required to prove that: (1) Shaw committed a drug trafficking crime; (2) he

proved count one of the indictment–that Shaw was involved in a conspiracy to sell ecstasy and marijuana–and Shaw does not contest this conviction. The Government also successfully established that when Shaw was arrested in January 2007, the apartment he was arrested in contained drugs and a firearm. But under count one, Shaw may be held responsible for the marijuana found in the Dallas apartment only if the Government successfully proved that it was part of the charged conspiracy. In addition, Shaw may be found guilty of count two only if the firearm he possessed was in furtherance of the crime charged in count one of the indictment–again the conspiracy charge. Shaw argues that the conspiracy ended far before his arrest on January 11, 2007, and that there is insufficient evidence that he possessed drugs in furtherance of the conspiracy on the day of his arrest. We agree.

### 1. Standard of Review

When a defendant moves for a judgment of acquittal at the close of the government's case, and renews the motion at the close of all evidence, this court reviews the motion *de novo*. *See United States v. Alarcon*, 261 F.3d 416, 421 (5th Cir. 2001).[4] We still review whether there was sufficient evidence under the highly deferential standard discussed above. *See Gulley*, 526 F.3d at 816.

### 2. Analysis

Posey testified that he stopped selling drugs in 2005, and that his communication with Shaw ended around the same time. The other named members of the conspiracy, Nelson and Blanton, were incarcerated from 2006 on, and there is no evidence that they continued their communication with Shaw after they were incarcerated. With no other active participants, Shaw argues

---

possessed a firearm; and (3) he did so in furtherance of the crime. *See* 18 U.S.C. § 924(c)(1)(A).

[4] Shaw did not present evidence in this case, so it was not necessary for Shaw to renew the motion because no new evidence was presented after he moved for a judgment of acquittal. *See United States v. Patterson*, 431 F.3d 832, 836 (5th Cir. 2005).

that the conspiracy necessarily ceased to exist prior to the time of his arrest in January 2007. Shaw also asserts that the Government cannot link the drugs discovered in the Dallas apartment with the named conspirators or other conspirators. The Government argues that unnamed co-conspirators were mentioned in the superseding indictment.

Evidence of even a single co-conspirator at large may suffice for the Government to demonstrate a continued conspiracy. *See United States v. Haddad*, 976 F.2d 1088, 1093 (7th Cir. 1992); *United States v. Mason*, 658 F.2d 1263, 1269-70 (9th Cir. 1981). A conspiracy does not necessarily end when all co-conspirators but one are incarcerated. *See United States v. Puig-Infante*, 19 F.3d 929, 945 (5th Cir. 1994). "Ordinarily, a defendant is presumed to continue involvement in a conspiracy unless that defendant makes a substantial affirmative showing of withdrawal, abandonment, or defeat of the conspiratorial purpose." *Id.* (citation and internal quotation marks omitted). What is more, "[e]ven when several members of a conspiracy are arrested, the conspiracy itself is not thereby necessarily terminated." *United States v. Goff*, 847 F.2d 149, 170 (5th Cir. 1988) (citation omitted). The Government, however, failed to present any evidence at trial as to any other known or unknown co-conspirators remaining in the conspiracy in January 2007.[5]

Shaw could not have been involved in a drug trafficking conspiracy with only himself. *Cf. United States v. Onick*, 889 F.2d 1425, 1432 (5th Cir. 1989) ("[A] jury can convict a defendant of conspiring with persons whose names are unknown . . . if the indictment charges a conspiracy with unknown persons and

---

[5] The Government argues that it presented evidence of an unknown conspirator who provided drugs to Posey. The evidence presented at trial, however, only indicates that this unknown individual provided Posey drugs from 1998 through either the end of 2004 or the beginning of 2005. There is no evidence to indicate that Shaw began dealing with this individual or ever had contact with this person. This is not sufficient evidence to establish a continued conspiracy through the time of Shaw's arrest.

*evidence supports* their existence and the existence of a conspiracy.") (citation omitted) (emphasis added). Posey's disassociation and the arrests of Nelson and Blanton terminated the conspiracy, or constituted a "defeat of the conspiratorial purpose." *See Puig-Infante*, 19 F.3d at 945. As much as a year separated the arrest of Shaw's known co-conspirators and Shaw's own arrest. There was a long (and unexplained) delay between acts which proved up the conspiracy (the controlled buy in April 2004), indictment in 2006, and Shaw's arrest on January 11, 2007. There is no evidence of contact between the conspirators in 2006 or 2007. There is also no evidence of unnamed conspirators taking part. Thus, contrary to the Government's assertion, the jury could not infer that Shaw conspired with unknown persons at the time of his arrest in January 2007. *See generally United States v. Villasenor*, 894 F.2d 1422, 1429 (5th Cir. 1990) ("[T]he evidence presented against [the defendant] establishes neither the existence of any unknown co[-]conspirators, such as buyers or sources, nor any agreement or concert of action on [the defendant's] part with any such others.").

The evidence presented at trial lends "equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence" with respect to the marijuana and firearm found in the Dallas apartment. *See United States v. Brown*, 186 F.3d 661, 664 (5th Cir. 1999). The Government failed to meet its burden, therefore we reverse these portions of Shaw's conviction and remand for proceedings consistent with this opinion.

## C. Motion for Mistrial

Shaw argues that two statements should have led to a mistrial. Shaw filed two pre-trial motions *in limine* to forbid testimony about: (1) his prior criminal record and (2) uncharged conduct. The court granted the motions in part, and ordered that such evidence not be introduced until the court ruled on its admissibility outside of the jury's presence. Twice during trial, Deputy U.S. Marshal Oran Abel ("Abel"), an officer who arrested Shaw on January 11, 2007,

testified about such matters before the court ruled on their admissibility. Abel testified that the officers knocked on the apartment door and announced their presence. Receiving no response, the officers broke down the door with a ram. The Government asked why the officers did this; Abel said Shaw "has multiple offenses where he's run from law enforcement." Defense counsel objected, requested a curative instruction, and moved for a mistrial. The court instructed the jury to disregard the statement and denied the motion for a mistrial. The second occurrence came on the heels of the first. The Government asked why a ram would be used "in general circumstances." Abel said: "the type of offense, as well as we had information that he was armed." Defense counsel objected and requested a mistrial, but not a curative instruction. The court sustained the objection and denied the motion for a mistrial, but gave no curative instruction.

### 1. Standard of Review

The denial of a motion for mistrial premised upon the introduction of improper evidence to the jury is reviewed for abuse of discretion. *United States v. Lucas*, 516 F.3d 316, 345 (5th Cir.), *cert. denied*, 129 S. Ct. 116 (2008). If error is found, the court applies harmless error analysis, and only orders a new trial

> when, after a review of the entire record, it appears that there is a significant possibility that the prejudicial evidence had a substantial impact on the jury verdict. We give great weight to the trial court's assessment of the prejudicial effect of the evidence, and prejudice may be rendered harmless by a curative instruction.

*Id.* (quotation omitted).

### 2. Analysis

The first statement was harmless. Abel stated that Shaw had previously run from law enforcement. This vaguely hinted at past unlawfulness, which can be prejudicial. But the statement was not particularly prejudicial in that there was no evidence that Shaw used force to evade law enforcement, or that he ran from the authorities on this occasion. Moreover, the evidence that Shaw sold

drugs was overwhelming: Shaw does not contest on appeal whether sufficient evidence linked him to the conspiracy. Finally, the court admonished the jury not to consider the statement, and there was no further mention of Shaw's past conduct during his trial. In context, Abel's remark does not create a "significant possibility that the prejudicial evidence had a substantial impact on the jury verdict." *See id.* The court did not abuse its discretion in denying a mistrial.

While the second statement is more troubling, our decision to reverse count two of the indictment renders it harmless. The statement did not bear in any manner on whether Shaw participated in the drug conspiracy, which Shaw does not dispute, or the quantity of drugs for which he was responsible, which we have already determined to be reasonable.

Because Abel's testimony did not have a substantial impact on the jury's verdict, we conclude that the district court did not abuse its discretion in denying Shaw's motions for a mistrial. Thus, we affirm.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM in part and REVERSE and REMAND in part for proceedings consistent with this opinion.