**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Roland Frank COPPOLA, Sr.,
Defendant-Appellant.**

No. 85–3395.

United States Court of Appeals,
Fifth Circuit.

April 29, 1986.

MacAllyn J. Achee, Baton Rouge, La., for defendant-appellant.

James Stanley Lemelle, Standford O. Bardwell, Jr., U.S. Atty., Baton Rouge, La., for plaintiff-appellee.

Before WILLIAMS, GARWOOD and JONES, Circuit Judges.

EDITH HOLLAN JONES, Circuit Judge:

Roland Frank Coppola appeals his conviction on all six counts of an indictment charging him with several offenses related to the theft of diesel oil from the Placid Oil Refinery in Port Allen, Louisiana, in late December 1979. The district court reviewed each of these contentions thoroughly and with care during the course of the prosecution. Because we, too, find Coppola's contentions on appeal meritless, we affirm the conviction.

Coppola and co-defendants Eric Anthony Robertson and Ernest Lewis were charged with conspiracy to steal 175,000 gallons of diesel oil from a shipment that was moving in interstate commerce, in violation of 18 U.S.C. § 371, and of stealing diesel oil from an interstate shipment, in violation of 18 U.S.C. § 659. Coppola was also charged with selling the stolen diesel oil, in violation of 18 U.S.C. § 2315, and with regard to the proceeds from the stolen fuel, mail fraud because he mailed an understated income tax return, in violation of 18 U.S.C. § 1341,

as well as two counts of filing false income tax returns, in violation of 26 U.S.C. § 7206(1). The jury returned guilty verdicts against Coppola and Robertson on all relevant counts. Lewis was acquitted. None of the defendants testified at trial.

Coppola first argues that the trial court erred in allowing a government agent to testify about certain statements made to him by Coppola's co-defendant Lewis. But for that testimony, Coppola contends, there was no evidence to establish a conspiratorial link between himself and Lewis or even Robertson. Coppola urges reversal on this point, maintaining that Lewis' out of court statements were entered at trial in violation of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Because Lewis himself did not testify at trial, Coppola's argument continues, his sixth amendment right to confront Lewis at trial was violated.

In *Bruton*, a government agent testified that Bruton's accused accomplice and co-defendant had told the agent out of court that Bruton and the declarant committed the offense charged. This powerfully incriminating evidence added substantial, even critical, weight to the government's case against Bruton in a manner immunized from cross-examination. In such a situation, the Supreme Court held Bruton's sixth amendment right of confrontation was impermissibly impaired, and reversed the conviction based upon the evidence.

The trial court correctly ruled that the agent's testimony here does not present a *Bruton* issue. In *United States v. Hicks*, 524 F.2d 1001, 1002–03 (5th Cir.1975), *cert. denied*, 424 U.S. 946, 96 S.Ct. 1417, 47 L.Ed.2d 353 (1976), where a witness to whom Hicks had confessed his role in the charged robbery recounted Hicks's statement, the court explained,

> This statement, being an admission, is not hearsay and therefore admissible against Douglas Hicks [Fed.R.Evid. 801(d)(2) ] (citation omitted). The other defendants argue that the testimony should, nevertheless, not be admitted in a joint trial, because it tends to incriminate

them while they are unable to cross-examine declarant Douglas Hicks who chose not to take the stand (citation omitted). Application of the *Bruton* rule, however, requires a more discriminating approach than exclusion of all out of court confessions by co-defendants. *Courts must exclude these confessions only when they directly inculpate the complaining co-defendants, as well as the declarant* (citations omitted) (emphasis added).

At Coppola's trial, agent Gibbens testified that Lewis had told him that, in late 1979 or early 1980, Lewis had operated and owned EL Energy Corporation, a company that bought and sold bulk quantities of oil. Gibbens further testified that Lewis had said that he had once dealt with a corporation called COIN, Inc., and that the man he had dealt with from COIN was "heavy-set and balding ... having a round face ... he could not recall the person's name but thought that one of his names started with the letter 'R' ...." According to Gibbens, Lewis also recalled that he had received a $40,000 check from COIN drawn on COIN's bank account and that he had converted it into a cashier's check which he deposited to his business account.

■ Gibbens' statement was properly admitted against Lewis as an admission of a party opponent under Fed.R.Evid. 801(d)(2)(A). If viewed as a co-conspirator statement, the testimony was also properly admitted under Fed.R.Evid. 801(d)(2)(E). Its admissibility is not precluded by *Bruton,* because none of the statements made by Lewis to Gibbens constitutes a confession, and none directly inculpates Lewis or Coppola. See *United States v. Brown,* 551 F.2d 639, 647 (5th Cir.1977), *reversed in nonpertinent part,* 569 F.2d 236 (5th Cir. 1978). Lewis' statements support an inference that he had done business with Coppola through COIN and such statements do not reflect guilt on Coppola. Instead, Lewis' statements are relatively innocuous statements such as those admitted in *United States v. Stewart,* 579 F.2d 356 (5th Cir.), *cert. denied,* 439 U.S. 936, 99 S.Ct. 332, 58 L.Ed.2d 332 (1978).

Furthermore, the record discloses that other evidence was introduced which adequately supported the jury's findings against Coppola on all the alleged counts. The government introduced a copy of COIN's check to EL Energy, dated at a time shortly after the theft from Placid Oil, and a copy of the cashier's check which Lewis described to Gibbens. To that extent, Gibbens' testimony merely corroborated the documentary evidence, which might be construed as incriminating of Lewis, but which the jury obviously did not accept as such—they acquitted him. Consequently, any harmful effect on Coppola was even less likely. Even though Lewis was acquitted, there was sufficient evidence to show that Coppola and Robertson participated in an obviously pre-arranged series of acts on the night of the theft and were thus properly convicted on the conspiracy and theft counts. Coppola's conviction for selling the stolen shipment of fuel to the unsuspecting buyer is likewise amply substantiated by the record.

■ Coppola next contends that the trial court erred in refusing to (1) sever the tax counts from the theft counts in the indictment against him and (2) grant him a separate trial. Fed.R.Crim.P. 8(b) provides that multiple defendants may be charged in the same indictment if they are alleged to have participated in the same "act or transaction or ... series of acts or transactions." When the facts underlying each offense are so closely related that proof of such facts is necessary to establish each offense, joinder of defendants and offenses is proper. *United States v. Gentile,* 495 F.2d 626, 630 (5th Cir.1974). By contrast, when there is no substantial identity of facts or participants between the offenses, there is no "series" of acts in the Rule 8(b) sense. *United States v. Marionneaux,* 514 F.2d 1244, 1249 (5th Cir.1975).

■ Counts 1 and 2 of the indictment allege that the three defendants conspired to and did steal diesel fuel from Placid Oil. Count 3 alleges that Coppola sold the stolen fuel. Coppola was also charged, under

Counts 4, 5 and 6, with misrepresenting, underreporting or failing to report the income from the sale of the stolen oil on his mailed 1980 tax returns. In order to establish his guilt on the tax counts, then, the same evidence was necessary to prove the conspiracy, theft and sale offenses. In *United States v. Beasley*, 519 F.2d 233 (5th Cir.1975), *vacated on other grounds*, 425 U.S. 956, 96 S.Ct. 1736, 48 L.Ed.2d 201 (1976), this court held,

> Joinder [under Rule 8(b)] of separate [conspiracy and tax evasion] offenses against coconspirators also charged in the indictment is proper where the underlying crime generated the alleged income tax violations (citations omitted).

519 F.2d at 238. *Accord United States v. Shelton*, 669 F.2d 446, 460–61 (7th Cir.), *cert. denied*, 456 U.S. 934, 102 S.Ct. 1989, 72 L.Ed.2d 454 (1982); *United States v. Kenny*, 645 F.2d 1323, 1344 (9th Cir.), *cert. denied*, 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981).

■ We conclude that the joinder of the defendants was also, as a matter of law, proper. Generally, persons, like the defendants here, who are indicted together should be tried together. *United States v. Lamp*, 779 F.2d 1088, 1093 (5th Cir.1986). Fed.R.Crim.P. 14 provides the trial court with the discretion to grant a severance even if joinder is proper under Rule 8(b). In order to obtain a Rule 14 severance, however, the defendant must make a showing of compelling prejudice. *Lamp*, 779 F.2d at 1093. Coppola's only specific claim of prejudice related to his alleged *Bruton* claim, which, as discussed *supra* was without merit. Further, the record discloses that the trial court carefully instructed the jury that the case against each defendant was to be separately considered.

■ Coppola's next three points on appeal involve allegations of prosecutorial misconduct. He contends that his ability to contact potential witnesses, and thereby mount a defense, was critically forestalled by the delivery, at the instance of the U.S. Attorney, of a "Victim-Witness Handbook" to several potential witnesses.[1] At an evidentiary hearing on the matter, Coppola produced only one witness, a friend and former business associate, to support his contention that the delivery of the handbooks so prejudiced and intimidated potential witnesses that he was effectively denied a fair trial. The witness testified that he had received the handbook from an Internal Revenue Service agent (who was known to the witness) and another person he thought to be an F.B.I. agent (in actuality, a Louisiana police officer) and that neither person threatened or intimidated him. Although the witness testified that the portion of the handbook he did read intimidated him, his subsequent conduct belies this assertion—soon after reading the handbook, he called Coppola, informed him of the visit and the handbook, and further, agreed to be interviewed by Coppola's lawyers. The trial court properly concluded that there was no evidence of actual prejudice to the defense. The court, however, found that certain portions might confuse an unsophisticated witness and possibly cause him to be reluctant to be interviewed by the defense. Accordingly, the trial court protected against this possibility, by forwarding a sufficiently curative notice (based, in large measure, on defense counsel's suggested draft and unobjected to by defense counsel) to each person to whom the handbook had been delivered.

■ Coppola contends that his ability to prepare for trial was also severely impaired by the government's alleged failure to produce complete and legible copies of the Placid Oil records in its possession, and by Placid Oil's refusal to assist him in interpreting the records as well as produce additional relevant records. Some six months before trial, the government certified that it had turned over to Coppola copies of all

---

1. The government's decision to distribute the handbook was prompted by a local newspaper article linking Coppola to organized crime. The handbook, prepared by the Department of Justice, is intended to inform victims and potential witnesses of their rights under the Victim and Witness Protection Act of 1982, 18 U.S.C. § 1512.

the Placid Oil documents in its possession, pursuant to Fed.R.Crim.P. 16 and the local automatic discovery rule. Coppola has shown nothing to dispute the accuracy of this certification. Further, when Coppola, at a pretrial hearing, complained about the legibility of some of the copies, the government invited defense counsel to examine the originals. Coppola's counsel failed to do so.

■ In his quest for additional production from Placid Oil, Coppola similarly defaulted. About six weeks before trial, Coppola filed a motion to subpoena Placid Oil employees for deposition, which the court granted. The week before trial, however, Coppola filed a motion to recall the subpoena, informing the court that he had resolved the matter, in the interim, by an informal interview with Placid Oil representatives. The court granted Coppola's request to recall the order. The record reflects that Coppola filed no subsequent motion directed toward Placid Oil's records. When Coppola withdrew his request for subpoena, he waived any objection he may have had with regard to Placid Oil's alleged failure to comply with his request. *Cf. United States v. Wilkins*, 659 F.2d 769, 775 (7th Cir.), *cert. denied*, 454 U.S. 1102, 102 S.Ct. 681, 70 L.Ed.2d 646 (1981).

■ Coppola's last assertion of prosecutorial misconduct involves the nearly five-year delay between the commission of the crime and the return of the indictment. The grand jury returned its indictment against Coppola in October 1984, within the applicable period for institution of prosecution of the December 1979 offenses. Coppola moved to dismiss the indictment, pursuant to Fed.R.Crim.P. 48(b), on the ground that the delay made it virtually impossible to prepare a defense against the charges. The trial court properly denied the motion. Uncontradicted evidence was adduced to show that the FBI did not obtain sufficient information to open a file on the 1979 theft from Placid Oil until March 1983, and only after the file was opened did the FBI receive its first information regarding Coppola's role in the theft. Although the due process clause may provide a basis for dismissal of an indictment if the defense can show at trial that prosecutorial delay has prejudiced the right to a fair trial, actual prejudice must be shown to exist as a result of delay. *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Mere passage of time does not constitute actual prejudice nor do speculative allegations, such as alleged loss of witnesses or evidence, or unproven charges of deliberate tactical delay. *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Ballard*, 779 F.2d 287, 293 (5th Cir.1986). Coppola did not show that the delay was prejudicial to his defense or rebut the government's evidence that the delay was the result of good-faith, active investigation, rather than intentional tactics designed to prejudice the defendant.

Coppola finally contends that he is entitled to a new trial because the district court failed to suppress allegedly incriminating business records of COIN, Inc., which he produced to the grand jury pursuant to subpoena. The subpoena was directed to Coppola in his capacity as corporate president. Coppola did not move to quash the subpoena, but instead voluntarily produced the documents at the grand jury hearing. When asked to identify the documents, however, Coppola demurred, asserting his fifth amendment right against self incrimination. He did, however, agree to leave the documents with the grand jury and subsequently identified the documents for the grand jury under court order.[2]

■ Ordinarily, a corporate agent cannot assert a fifth amendment privilege against producing corporate records regardless whether they contain information incriminating him, because the corporation itself has no fifth amendment privilege. *Bellis v. United States*, 417 U.S. 85, 87–89,

---

**2.** We note that Coppola did not consult a lawyer before complying with the subpoena. He also forewent consulting a lawyer for the hearing on the identification issue or for his next appearance before the grand jury.

94 S.Ct. 2179, 2182–84, 40 L.Ed.2d 678 (1974); *Curcio v. United States*, 354 U.S. 118, 122, 77 S.Ct. 1145, 1148, 1 L.Ed.2d 1225 (1957). However, an individual may have a fifth amendment privilege against being personally compelled to produce documents. *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). Coppola waived any personal privilege he may have had with regard to the act of production, by failing to file a motion to quash and by voluntarily complying with the subpoena. *United States v. Penrod*, 609 F.2d 1092, 1095–96 (4th Cir.1979), *cert. denied*, 446 U.S. 917, 100 S.Ct. 1850, 64 L.Ed.2d 271 (1980); *United States v. Wolfson*, 299 F.Supp. 1246 (D.Del.1969).

For the foregoing reasons, we AFFIRM.