United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 21, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 04-20506

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

JOSE FREDRIC MENDOZA-ALARCON; SACHA HILARY LEE; MARVA SYLVESTER

Defendants - Appellants

Appeals from the United States District Court
for the Southern District of Texas
No. 4:03-CR-230-4

Before KING, Chief Judge, and DAVIS, Circuit Judge, and ROSENTHAL,[*] District Judge.

PER CURIAM:[**]

This appeal arises from a conspiracy that involved stealing vehicles, obtaining fraudulent titles for those vehicles, transporting the vehicles across state lines, and selling them to individuals or dealerships. On December 3, 2003, a grand jury

---

[*] District Judge of the Southern District of Texas, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

-1-

issued a ten-count superceding indictment charging Defendants Jose Fredric Mendoza-Alarcon, Sacha Hilary Lee, and Marva Sylvester with crimes related to the conspiracy. Count One charged Mendoza, Lee, and Sylvester with knowingly and willfully conspiring to transport in interstate commerce vehicles they knew to be stolen, in violation of 18 U.S.C. § 371. Count Four charged Lee with aiding and abetting the unlawful transportation across state lines of a stolen 1999 Ford Expedition, in violation of 18 U.S.C. §§ 2 and 2312. Counts Six and Eight charged Mendoza with aiding and abetting the unlawful transportation across state lines of a stolen 2000 Toyota and a stolen 1998 Honda, in violation of 18 U.S.C. §§ 2 and 2312.[1] On March 5, 2004, a jury found Mendoza, Lee, and Sylvester guilty of all counts against them.

The district court sentenced Mendoza to five-months imprisonment on each count to run concurrently, followed by three-years of supervised release, and imposed a $200 special assessment. After departing downward, the court sentenced Lee to four-years probation on each of the two counts to be served concurrently and imposed a $200 special assessment. Finally, the court sentenced Sylvester to fifteen-months imprisonment, followed by three-years supervised release, and imposed a fine of $3,000 and a $100 special assessment.

---

[1] All the other counts related to individuals who are not parties to this appeal.

On appeal, each of the defendants argues that the evidence was insufficient to support his or her conviction. Mendoza also argues that: (1) the court erred in failing to grant his motion for a judgment of acquittal pursuant to FED. R. CRIM. P. 29; (2) the court erred in failing to grant him a new trial; and (3) the jury failed in its duty to deliberate. Lee argues that the court erred in admitting evidence that a witness, Janie Braune, saw her filling out a vehicle inspection form when there was no vehicle present. Finally, Sylvester argues that: (1) the court erred in denying her motion for severance; (2) the court erred by admitting evidence that she inspected a vehicle that the government did not prove was stolen; and (3) there was a fatal variance between the charge contained in the indictment and the proof offered at trial. In addition, via a supplemental letter brief, Sylvester challenges her sentence under <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), arguing that it was imposed pursuant to an unconstitutional mandatory sentencing guidelines system. We AFFIRM the defendants' convictions and Sylvester's sentence.

## A. Sufficiency of the Evidence

Mendoza argues that the evidence at trial was insufficient to show that he: (1) knew the cars were stolen; (2) knew of the unlawful purpose of the agreement; (3) willfully joined the conspiracy; and (4) intended to further the unlawful purpose. Our review of the record, however, leads us to conclude

-3-

otherwise.  There was testimony by two witnesses, Moctezuma Luna and Jose Ramon Gutierrez, that Mendoza was associated with and took direction from Roberto Antonio Herrera, the key participant of the car-theft conspiracy in California.  There was also evidence that Mendoza actively participated in selling a stolen Honda Accord and attempted to repossess a stolen Toyota Camry.  Mendoza prepared the bill of sale for the stolen Honda.  With respect to the stolen Toyota, Mendoza appeared as the buyer on the title, asked Gutierrez to repossess the Toyota, and prepared the repossession note authorizing Gutierrez to repossess the car.  In considering the evidence in the light most favorable to the government and accepting all inferences in favor of the verdict, we conclude that a rational trier of fact could have found that the evidence established Mendoza's guilt beyond a reasonable doubt.  See United States v. Gardea-Carrasco, 830 F.2d 41, 43 (5th Cir. 1987).  Accordingly, the evidence was sufficient to support Mendoza's conviction.

Lee argues that Janie Braune's testimony that Lee was filling out a vehicle inspection form when there was no vehicle present was legally insufficient to support her conviction because it did not permit a rational jury to find that she knew the vehicles referred to in the indictment were stolen.  We conclude that the evidence was sufficient for a jury to conclude that Lee knew the vehicles were stolen.  Specifically, the jury could conclude that Lee knew the vehicles were stolen from Juan

Anjello Beltran's testimony that he would obtain Texas titles for Herrera without physically taking the vehicles for inspections, the fact that Lee filled out an inspection certificate when there was no vehicle present, and the fact that Lee's signature was on the vehicle inspection form for a Ford Expedition involved in the conspiracy. Although Lee argues that she could have been filling out the inspection form absent a vehicle for any number of reasons, the evidence need not exclude every reasonable hypothesis of innocence. United States v. Martinez, 151 F.3d 384, 389 (5th Cir. 1998). Accordingly, considering the evidence in the light most favorable to the government, and accepting all reasonable inferences that tend to support the verdict, a rational juror could find that Lee knew the Ford Expedition was stolen. See Gardea-Carrasco, 830 F.2d at 43.

Finally, Sylvester argues that the evidence was insufficient to show that she knew the vehicles were stolen and that she knowingly entered into the conspiracy. Again, we look at the evidence presented as a whole, including Beltran's testimony that he would obtain Texas titles for Herrera without physically taking the vehicles for inspections and evidence that Sylvester signed inspection stickers for two cars that were both stolen and involved in the conspiracy. A rationale juror could infer that Sylvester never actually physically inspected the vehicles when she signed the vehicle inspection forms. In combination with the fact that Sylvester inspected vehicles at ICM Automotive (which

-5-

was owned by another participant in the conspiracy, Frank Nwabardi) along with Lee (who also signed vehicle inspection forms for stolen vehicles), a rational trier of fact could conclude that Sylvester knew the cars were stolen and knowingly entered into the conspiracy. Considering the evidence in the light most favorable to the government and accepting all reasonable inferences that tend to support the verdict, we conclude that the evidence was sufficient to support Sylvester's conviction. See Gardea-Carrasco, 830 F.2d at 43.

**B.  Judgment of Acquittal Pursuant to FED. R. CRIM. P. 29**

Mendoza argues that the court erred in denying his motion for judgment of acquittal pursuant to FED. R. CRIM. P. 29, which he made at the end of the government's case in chief and reurged at the close of the defense's case in chief. Mendoza contends that his motion should have been granted because the government failed to prove that he joined the conspiracy or that he knew the vehicles were stolen. We conclude that the court properly denied Mendoza's motion because, as stated above, the evidence was sufficient for a rational juror to find that Mendoza joined the conspiracy and knew that the vehicles were stolen.

**C.  Failure to Grant Mendoza a New Trial**

Mendoza argues that the district court erred in failing to grant him a new trial pursuant to FED. R. OF CRIM. P. 33. Rule 33 provides in pertinent part that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the

-6-

interest of justice so requires." Mendoza concedes that he did not file a motion for a new trial. He asserts, however, that such a motion was filed by his co-defendant Terry Kim, and because his motion to join in the motions of his co-defendants was granted, this court should consider Mendoza as having filed a motion for a new trial. Mendoza goes on to argue that the court erred in not granting a new trial because the government failed to furnish him with all of the discovery materials he was entitled to under FED. R. CRIM. P. 16. Mendoza asserts that the defense made mistakes in determining whether to go to trial or to plead as a result of the government's failure to provide him with the voluminous reprints prepared by officer Tom Civitello, detective Richard Lee Job, and officer Anthony Banks before trial.

The record does not reflect that a motion for a new trial under FED. R. OF CRIM. P. 33 was made or ruled on by the court. Indeed, Mendoza provides no record cite to where such a motion appears. Absent such a motion, the district court was without authority to grant a new trial. See FED. R. CRIM. P. 33; United States v. Eaton, 501 F.2d 77, 79 (5th Cir. 1974).

**D.    Jury's Duty to Deliberate**

Mendoza argues that the jury failed in its duty to deliberate because it only deliberated for five hours. Mendoza points to no authority for his argument but nonetheless asks this court to consider the issue. We conclude that Mendoza has waived

his argument because he failed to cite any legal authority for his position.  See FED. R. APP. P. 28(a)(9)(A); United States v. Edwards, 303 F.3d 606, 647 (5th Cir. 2002).

**E.    Admission of Evidence Regarding Lee**

Lee argues that the court erred in admitting Braune's testimony that she saw Lee filling out an inspection form when there was no vehicle present.  Specifically, Lee asserts that the evidence was not, as the court concluded, evidence intrinsic to the conspiracy, but rather evidence pursuant to FED. R. EVID. 404(b).

FED. R. EVID. 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

"[E]vidence of acts committed pursuant to a conspiracy and offered to prove the defendant's membership or participation in the conspiracy are not extrinsic evidence, i.e., evidence of other acts, for purposes of Rule 404(b)." United States v. Garcia Abrego, 141 F.3d 142, 175 (5th Cir. 1998) (internal quotations omitted).  "Acts committed in furtherance of the charged conspiracy are themselves part of the act charged." Id.  "Thus, evidence of such acts constitutes intrinsic evidence--that is,

-8-

direct evidence of the charged conspiracy itself." Id. Part of the conspiracy here consisted of getting Texas titles to stolen vehicles without showing the cars for a physical inspection. Thus, the evidence that Lee completed a vehicle inspection form without actually inspecting the car clearly goes to show Lee's membership and participation in the conspiracy and that she committed acts in furtherance of the conspiracy. Thus, Braune's testimony about this act was not evidence of other crimes, wrongs, or acts under 404(b), but rather evidence intrinsic to the conspiracy itself. Accordingly, the district court did not err in admitting Braune's testimony as evidence intrinsic to the conspiracy.

**F. Sylvester's Motion for Severance**

Sylvester argues that the district court erred in denying her various motions for severance based on the following evidence and testimony introduced at trial: (1) evidence that Lee's state license to inspect automobiles was suspended because she made false entries when inspecting a car; (2) Braune's testimony that she witnessed Lee filling out a vehicle inspection form while no car was present; (3) Nwarbardi's testimony that he never stated that he had taken documents to Sylvester in order to obtain completed vehicle inspection forms; and (4) Officer Civitello's testimony (impeaching Nwarbardi's testimony) that he was present when Nwabardi made the statement that he took two California certificates of title to Sylvester to obtain vehicle inspection

certificates.  Sylvester argues that the evidence was prejudicial because it allowed the jury to assume that Sylvester: (1) knew the vehicles were stolen based on her association with Lee; and (2) was involved in the conspiracy.

FED. R. CRIM. P. 14 provides:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

In order to obtain a Rule 14 severance, the defendant must make a showing of "compelling prejudice."  United States v. Coppola, 788 F.2d 303, 307 (5th Cir. 1986).  Where the record discloses that the trial court carefully instructed the jury that the case against each defendant was to be separately considered, courts will usually not find compelling prejudice.  See id.  Here, the evidence of Lee's license suspension and Braune's testimony did not result in "compelling prejudice" to Sylvester because the evidence and testimony clearly implicated only Lee.  Furthermore, Braune answered "no" when Sylvester's counsel asked her if she had ever suspended Sylvester or given Sylvester any citations.  Also, the district court gave the jury a very thorough instruction that it was not to consider evidence about one defendant in considering the counts against another defendant.[2]

---

[2]  The court gave the following instruction to the jury immediately before Braune's testimony:

There are six defendants here.  Some of the testimony

In addition, with respect to Nwarbardi and Officer Civitello's testimony, the court also gave a limiting instruction. Therefore, the fact that the evidence was admitted was not prejudicial. <u>See</u> <u>Coppola</u>, 788 F.2d at 307. Accordingly, the district court did not abuse its discretion in denying Sylvester's motion for severance.

## G. Admission of Evidence Regarding Sylvester

Sylvester argues that the district court erroneously admitted evidence that Sylvester completed a vehicle inspection

---

applies to certain defendants, some applies to others. I want to remind you of some basic principles that you need to keep in mind as you're assessing the evidence through the trial. First of all, I believe you have a copy of the indictment and I want to remind you that a separate crime is charged in each count of the indictment. And the evidence pertaining to each count should be considered separately. And the fact that you find a particular defendant guilty or not guilty on a particular count should not control your verdict as to other crimes or other defendants. You must give separate consideration of the evidence as to each defendant. In addition, in many, if not all, of the counts, a separate crime is charged against each defendant in each count. And each count and the evidence pertaining to it, again, needs to be considered separately as to each defendant within that count. The fact that you might find one or more of the accused guilty or not guilty of a particular crime in a particular count should not control your verdict as to any other crime or any other defendant as charged in the count under consideration. You must give separate consideration of the evidence as to each defendant. So, as the testimony comes out, I think you need to keep in mind to be focusing on which defendant is the subject of the testimony and then evaluating the evidence as to that defendant. And remember your decision as to each defendant and each count will need to be separate.

form for a 2000 7-Series BMW because it incorrectly determined the evidence was intrinsic to the conspiracy rather than Rule 404(b) evidence. Sylvester contends that the evidence was not intrinsic because the government did not prove it was stolen or include it in the indictment.

As discussed above with respect to Lee's claim, intrinsic evidence includes evidence of acts committed to prove the defendant's membership or participation in the conspiracy or acts committed in furtherance of the conspiracy. Garcia Abrego, 141 F.3d at 175. Here, while the government did not prove the BMW was stolen, the BMW was connected to the conspiracy by virtue of its association with David Fox. The Certificate of Title for the BMW listed David J. Fox as the owner. The name David J. Fox was listed as the previous owner of a stolen Porsche that was a part of the conspiracy. In addition, Fox's address, which was listed on the application for title for the BMW, belonged to Vilma Flores, who was Rodriguez's mother, and Rodriguez was known to sell stolen cars for Herrera. Thus, Sylvester's name on the inspection certificate implicated her in the conspiracy, and the fact that Sylvester completed a vehicle inspection form for the BMW was evidence intrinsic to the conspiracy. Accordingly, the district court did not err in admitting this evidence as intrinsic to the conspiracy.

## H. Fatal Variance

Sylvester argues that there was a fatal variance between the

-12-

conspiracy charged in the indictment and the proof at trial of multiple conspiracies.  More specifically, Sylvester contends that the charge in the indictment and the proof offered at trial did not share a common goal, differed in nature, and did not involve an overlap of participants.  According to Sylvester, the indictment alleged a conspiracy to obtain stolen vehicles, obtain counterfeit and fraudulent titles for those stolen vehicles, transport the stolen vehicles interstate, and sell them.  She argues, on the other hand, that the evidence at trial established a second conspiracy to resell salvaged cars for more than their market value.  Sylvester asserts that this fatal variance violated her substantial rights because the evidence against her was so weak.

To demonstrate a fatal variance the defendant must prove: (1) a variance between the indictment and the proof at trial; and (2) that the variance affected the defendant's substantial rights.  United States v. Morrow, 177 F.3d 272, 291 (5th Cir. 1999) (per curiam).  The existence of a single or multiple conspiracies is determined by examining three factors: (1) the existence of a common goal; (2) the nature of the scheme; and (3) the overlapping of participants in the various dealings.  Id.; United States v. Allen, 76 F.3d 1348, 1370 (5th Cir. 1996).  A jury's finding that a single conspiracy was proven by the evidence will be affirmed unless the evidence, viewed in the light most favorable to the government, would preclude reasonable

-13-

jurors from finding a single conspiracy beyond a reasonable doubt.  Morrow, 177 F.3d at 291; United States v. Morris, 46 F.3d 410, 415 (5th Cir. 1995).

There was no variance between the charge in the indictment and the evidence at trial.  First, there was a common goal.  The testimony by Beltran and Officer Civitello established that the purpose of the conspiracy was to steal cars, alter VINs, retitle cars with false information, transport the cars across state lines, and resell the cars.  At no time did they make any mention that the conspiracy involved the resale of salvaged cars.  Although Herrera stated that he obtained clean titles to salvaged cars to resell them at higher than market prices, the vehicles Herrera was speaking of were actually stolen.  In addition, Sylvester contributed to reaching that common goal by completing vehicle inspection forms to get titles to the stolen cars.  See United States v. DeVarona, 872 F.2d 114, 118 (1989) (stating that a single conspiracy exists "if the evidence demonstrates that all of the alleged co-conspirators directed their efforts to accomplish a single goal or common purpose").

Second, the nature of the scheme was such that completion of the vehicle inspection forms was part of a single conspiracy.  Sylvester asserts that the nature of the schemes was different because the charged conspiracy required the theft and transportation of stolen vehicles but the separate conspiracy required neither proof that the vehicle was stolen nor that it

-14-

traveled in interstate commerce.  Sylvester's argument is
misguided.  Here, there was one conspiracy, and, as described
above, it was to steal cars, alter VINs, retitle cars with false
information, transport the cars across state lines, and resell
the cars.  Completing the vehicle inspection forms was necessary
to obtain titles for the stolen cars.  <u>Morris</u>, 46 F.3d at 416
(stating that in analyzing whether the nature of the scheme
points to a single conspiracy, this court asks whether the
activities of one aspect of the scheme are necessary or
advantageous to the success of another aspect of the scheme or to
the overall success of the venture, and whether the agreement
contemplated bringing to pass a continuous result that will not
continue without the ongoing cooperation of the conspirators);
<u>DeVarona</u>, 872 F.2d at 119-20.  Thus, the nature of the scheme was
such that completion of the forms was part of one single
conspiracy.

Third, the overlapping of participants in the various
dealings and the interrelationships among the various
participants in the conspiracy suggests there was a single
conspiracy.  <u>See</u> <u>Morris</u>, 46 F.3d at 416.  Sylvester argues that
there was no overlap of participants because there was no
evidence linking Sylvester to Herrera, Beltran, Nwarbardi, or
Teran, who were all key participants in the conspiracy.  While
Sylvester's assertions may be correct, the members of a
conspiracy that functions though a division of labor need not

have an awareness of the existence of the other members or be privy to each aspect of the conspiracy. United States v. Richerson, 833 F.2d 1147, 1154 (5th Cir. 1987); Morris, 46 F.3d at 416-417. Thus, the fact that neither Herrera nor Beltran knew about Sylvester is not dispositive. Furthermore, Sylvester worked at ICM Automotive, which was owned by Nwarbardi, who she admits was the focus of the investigation. See Morris, 46 F.3d at 416 (stating that there is no requirement that every member must participate in every transaction to find a single conspiracy, but only that parties who knowingly participate with core conspirators to achieve a common goal may be members of an overall conspiracy). Accordingly, there was no variance between the charge in the indictment and the evidence at trial.

## I. Sylvester's **Booker**-Argument

Sylvester challenges her sentence under Booker, arguing that it was imposed pursuant to a mandatory sentencing guidelines regime. Because Sylvester did not raise her Booker objection below, we review it for plain error. See United States v. Mares, 402 F.3d 511, 515 (5th Cir. 2005). Although Sylvester has shown error that is plain, she cannot satisfy her burden of showing that the error affected the outcome of the district court proceedings because she points to no evidence in the record indicating that the court would have sentenced her differently under an advisory sentencing scheme. See United States v. Olano, 507 U.S. 725, 734 (1993); Mares, 402 F.3d at 521. Sylvester,

-16-

however, argues that <u>Booker</u> error is structural error, and even if the error is not structural, it should be presumed prejudicial because the difference in the sentencing scheme pre and post-<u>Booker</u> is extremely likely to affect a district court's sentencing decision. This court has specifically rejected both of these arguments as inconsistent with <u>Mares</u>. <u>See</u> <u>United States v. Martinez-Lugo</u>, --- F.3d ----, 2005 WL 1331282 (5th Cir. June 7, 2005); <u>United States v. Malveaux</u>, No. 03-41618, 128 Fed. Appx. 362, 364 n.9 (5th Cir. Apr. 11, 2005) (unpublished). Accordingly, Sylvester's challenge to her sentence fails.

AFFIRMED.