United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 21, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-20179

_____

UNITED STATES OF AMERICA

                              Plaintiff - Appellee

v.

FRANK NWABARDI

                              Defendant - Appellant

_____

Appeal from the United States District Court
for the Southern District of Texas
No. H-03-CR-230-02

_____

Before KING, Chief Judge, and DAVIS, Circuit Judge, and
ROSENTHAL,[*] District Judge.

PER CURIAM:[**]

Defendant-appellant Frank Nwabardi appeals his conviction

for participating in a conspiracy that involved stealing

vehicles, obtaining fraudulent titles for those vehicles,

transporting the vehicles across state lines, and selling them to

individuals or dealerships.  For the following reasons, we AFFIRM

---

[*]     District Judge of the Southern District of Texas,
sitting by designation.

[**]    Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

-1-

Nwabardi's conviction and sentence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 3, 2003, a grand jury issued a ten-count superceding indictment charging ten participants, one of whom was Nwabardi, with crimes related to the conspiracy.[1] Count One charged Nwabardi with knowingly and willfully conspiring to transport in interstate commerce at least three separate vehicles he knew to be stolen in violation of 18 U.S.C. § 371.[2] Counts Two and Five charged Nwabardi with aiding and abetting in the unlawful interstate transport of a 2000 Ford Excursion and a 2001 Lincoln Navigator, respectively, in violation of 18 U.S.C. §§ 2 and 2312. Nwabardi pleaded not guilty to all counts against him.

---

[1] Nwabardi was implicated in only three of the ten counts of conspiracy listed in the indictment. The instant appeal was originally consolidated with the lead case involving several other defendants from this conspiracy. By oral direction, this court severed Nwabardi's appeal and ordered separate briefing by the parties on July 19, 2005. The panel issued an unpublished per curiam opinion affirming the convictions of some of Nwabardi's co-conspirators on July 21, 2005. United States v. Mendoza-Alarcon, No. 04-20506, 140 F. App'x 529, 532 (5th Cir. July 21, 2005).

[2] Specifically, Count One charged Nwabardi with the following overt acts in connection with the criminal scheme: (1) conspiring with Roberto Herrerra, the purported leader of the criminal enterprise, to cause Olefumi Ajai, another participant, to generate a vehicle identification certificate, which was then used to obtain a Texas certificate of title, for a 2000 Ford Excursion; (2) conspiring with Herrera to cause an unknown person to generate a vehicle identification certificate, which was then used to obtain a Texas certificate of title, for a 2001 Lincoln Navigator; and (3) obtaining a certified copy of the original Texas title for a 1999 Lexus, which was later sold by Bruce Dirzo, another member of the conspiracy, in California.

The criminal scheme involved a large and complex auto-theft ring. Some of the participants stole cars from Texas, California, and Arkansas and altered the identification information on the vehicles in order to obtain counterfeit out-of-state titles. Once they obtained counterfeit titles for the stolen out-of-state vehicles, other members of the conspiracy would enlist the services of local businesses to register the vehicles in Texas. One of the Texas businesses used was New Millennium Title Transfer Service, which Nwabardi owned and operated. Specifically, Nwabardi's business completed auto title applications for individuals seeking to transfer their titles or obtain certified copies of their titles. Absent clean Texas titles, the ultimate objective of the conspiracy to sell the stolen vehicles at a profit would have been considerably undermined.

Ordinarily, when a person seeks a title and registration for an out-of-state vehicle in Texas, the individual must present the out-of-state title along with a vehicle identification certificate, proof of insurance, and a completed title application to the county tax assessor. The tax office then examines the documents and forwards them to an office in Austin, which issues a new Texas title to the individual.

In order to understand Nwabardi's precise role in the conspiracy, it is necessary to examine how an individual obtains a vehicle identification certificate. A safety inspection

-3-

station issues a vehicle identification certificate, which identifies the vehicle by its Vehicle Identification Number ("VIN"). Unless the inspector falsifies the information on the inspection documents, the vehicle must be physically present at the inspection. An additional form called a VI-30-A must be completed for out-of-state vehicles, which calls for the inspector to identify the VIN of the vehicle. The inspector is required to sign the form, swearing that he has personally witnessed the VIN. The certificate is then relied upon by the Texas Department of Transportation in issuing a fresh title.

At trial, the government introduced evidence that Olefumi Ajai assisted Nwabardi by providing vehicle identification certificates based only on the out-of-state titles. Ajai owned an auto shop named Uni-Tech Automotive, which conducted safety inspections and issued vehicle identification certificates. According to the government's theory, Nwabardi was aware that Ajai was conducting the safety inspections without requiring the presence of the vehicles.[3] Nwabardi would then complete the title application, assemble and send away the package of relevant

---

[3] Nwabardi testified at trial that he never personally visited Ajai to pick up the VI-30-A forms for the out-of-state vehicles that he was completing the title applications for. The title history packets on file with the Texas Department of Transportation for all three vehicles connected to Nwabardi in the indictment indicate that a California title was used to obtain the Texas title. Without explaining this apparent discrepancy, Nwabardi flatly denied that he needed the out-of-state forms to process the title application.

documents to the county tax assessor, and await the issuance of fresh title from Austin.  Although the government presented no direct evidence of Nwabardi's voluntary involvement in the criminal enterprise, the government bolstered the circumstantial evidence of such irregular practices with live testimony from other members of the conspiracy explaining Nwabardi's active role in the conspiracy.

On March 3, 2004, the jury found Nwabardi guilty on all three counts.  The district court sentenced Nwabardi to forty-two months imprisonment and three years supervised release.  The court also imposed a $300 special assessment.  Nwabardi filed a timely appeal to this court on January 31, 2005.  On appeal, Nwabardi argues only that the evidence was insufficient to sustain his convictions, and the district court therefore erred in not granting his motion for a judgment of acquittal under FED. R. CRIM. P. 29.

## II.  DISCUSSION

### A.    Standard of Review

We review de novo a district court's denial of a motion for acquittal.  United States v. DeLeon, 170 F.3d 494, 496 (5th Cir. 1999).  Our review of a jury's verdict, however, is "tempered with great deference," and this court accordingly evaluates the evidence in the light most favorable to the jury verdict.  United States v. Valuck, 286 F.3d 221, 224 (5th Cir. 2002); see also

United States v. Ayala, 887 F.2d 62, 67 (5th Cir. 1989) (applying a "rule of reason" that affords some latitude for the jury to evaluate facts in light of natural human inclinations and common knowledge). Therefore, in reviewing a challenge to the sufficiency of the evidence to support a conviction, we will uphold the verdict if a rational juror could have found each element of the charged offense beyond a reasonable doubt. United States v. McCauley, 253 F.3d 815, 818 (5th Cir. 2001); United States v. Mulderig, 120 F.3d 534, 546 (5th Cir. 1997) ("It is by now well settled that a defendant seeking reversal on the basis of insufficient evidence swims upstream."). "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." United States v. Bermea, 30 F.3d 1539, 1551 (5th Cir. 1994). Our review does not depend on whether the jury in fact made the correct determination of guilt or innocence but only whether the jury's decision to convict or acquit was rational in light of the available evidence. See Burton v. United States, 237 F.3d 490, 497 (5th Cir. 2000).

**B. Sufficiency of the Evidence**

**1. Count One: Conspiracy Under 18 U.S.C. § 371**

Nwabardi challenges the sufficiency of the evidence that the government presented at trial to show that he knowingly and

-6-

willfully conspired to transport in interstate commerce three stolen vehicles, specifically a 2000 Ford Excursion, a 2001 Lincoln Navigator, and a 1999 Lexus.[4]  In particular, Nwabardi questions the credibility of two key government witnesses, Juan Beltran and Olefumi Ajai, and contends that their testimony provided insufficient evidence of Nwabardi's guilt on the conspiracy charges.  Nwabardi argues that the documents brought to him contained falsified information and that he was unaware of any possible criminal activity because there was a considerable lapse of time between his title work and the actual theft of the vehicles.  In essence, he claims that he was not aware that the vehicles were stolen and, therefore, did not knowingly participate in the criminal activity.  Under the circumstances, Nwabardi argues that "it is possible" that he was unaware of his contribution to the criminal enterprise.  (Appellant's Br. 10.) In light of our deferential standard of review with respect to jury verdicts, we decline to indulge Nwabardi's alternative theory of the evidence and find ample basis in the record for the jury to conclude otherwise.

To prove a conspiracy in violation of 18 U.S.C. § 371, the government must establish three separate elements beyond a

_____

[4]    On this appeal, Nwabardi does not contest that a criminal conspiracy existed but rather presents the narrower legal issue of whether the government's evidence against him was sufficient to prove that Nwabardi was a voluntary member of the criminal scheme or merely a business owner who unwittingly rendered services that furthered a criminal conspiracy.

reasonable doubt: (1) an agreement between two or more persons to pursue an unlawful objective; (2) the defendant's knowledge of the unlawful objective and voluntary agreement to join the conspiracy; and (3) an overt act by one or more members of the conspiracy in furtherance of the objective. United States v. Holmes, 406 F.3d 337, 351 (5th Cir. 2005). The government need not produce direct evidence to convict the members of a conspiracy under § 371 but rather "each element may be proven by circumstantial evidence." Mulderig, 120 F.3d at 547. The jury may infer fraudulent intent from "circumstantial evidence that one party arranged matters with another party in such a way as would facilitate the commission of fraud." Crowe v. Henry, 115 F.3d 294, 297 (5th Cir. 1997). In considering the evidence in the light most favorable to the verdict, we find that a rational trier of fact could have concluded that the evidence established Nwabardi's guilt beyond a reasonable doubt. McCauley, 253 F.3d at 818.

The testimony of Ajai and Beltran was central to the government's case against Nwabardi, as both men explained their specific dealings with Nwabardi and how his efforts furthered the unlawful goals of the conspiracy. Ajai testified that on previous occasions unrelated to the conspiracy, Nwabardi would present an actual vehicle to Ajai for inspection to procure the vehicle identification certificate for a standard fee. With respect to the vehicles listed in the indictment, however,

Nwabardi simply brought Ajai the California titles and requested that he issue the vehicle identifications certificates without physical inspection. Ajai also testified that Nwabardi paid him additional compensation above the normal fee for these inspection services when no vehicle was present. Consistent with Ajai's account, Beltran testified that he brought only the California titles--never the vehicles themselves--to Nwabardi's business.

Irregular business practices or an unexplained deviation from the ordinary course of business can provide circumstantial proof of one's participation in the conspiracy itself. See United States v. Bieganowski, 313 F.3d 264, 277 (5th Cir. 2002) (affirming conviction on conspiracy charges where circumstantial evidence established the defendant's actions "far exceeded the limits of an ordinary professional relationship"); United States v. Sutherland, 656 F.2d 1181, 1187-88 (5th Cir. 1981) (holding that unexplained changes in the manner of processing traffic violation tickets constituted "overwhelming circumstantial evidence" of a criminal conspiracy). When viewed in this light, the testimony of Beltran and Ajai tends to corroborate Nwabardi's complicity with the criminal scheme. In particular, the conspicuous changes in Nwabardi's course of dealing with Ajai-- i.e. the failure to present an actual vehicle and additional compensation for the inspection services on these occasions--lend credence to the jury's finding on the evidence presented at trial. At the very least, we find such circumstantial evidence

more than sufficient to support an inference that Nwabardi was guilty of the § 371 conspiracy.

Moreover, although both Beltran and Ajai were able to reach favorable plea agreements based on their cooperation with the government's case,[5] Nwabardi misapprehends the scope of our review with respect to the credibility of incriminating testimony of co-conspirators.  "A guilty verdict may be sustained even if supported only by the uncorroborated testimony of a co-conspirator, and even if the witness is interested due to a plea bargain, unless the testimony is incredible on its face."  Burton v. United States, 237 F.3d 490, 498 (5th Cir. 2000); see also United States v. Gadison, 8 F.3d 186, 190 (5th Cir. 1993); United States v. Hernandez, 962 F.2d 1152, 1157 (5th Cir. 1992).  In this case, the testimony of both Beltran and Ajai supported the inference that Nwabardi voluntarily joined the conspiracy.  Given our review of the record, we cannot find that the testimony was facially implausible as a matter of law such that we should disturb the credibility determinations of the jury.  See United States v. Dadi, 235 F.3d 945, 951 (5th Cir. 2000) ("The credibility of witnesses is a matter for the jury and its determinations demand deference.").

---

[5]  The pending criminal charges against Beltran from Texas, California, and New Mexico were all dismissed based upon his cooperation, and he was never charged in any federal court for involvement in the conspiracy.  Ajai was originally listed as a defendant on the superceding indictment but pleaded guilty to one count in exchange for dismissal of six other charges.

**2. Counts Two and Five: Aiding and Abetting Under 18 U.S.C. §§ 2 and 2312**

Nwabardi also disputes the sufficiency of the evidence to support the aiding and abetting charges under 18 U.S.C. §§ 2 and 2312 with respect to the 2000 Ford Excursion and 2001 Lincoln Navigator. To prove that a defendant aided and abetted the commission of a criminal offense, the government must demonstrate that the defendant "intentionally associated with, and participated in, the criminal venture and acted to make the venture succeed." Id. Nwabardi concedes that he completed the title applications for both vehicles. In challenging these convictions, Nwabardi simply reiterates his argument that he was unaware that the vehicles were stolen when he performed his services and therefore lacked the specific intent to aid and abet the conspiracy. As with his conviction on the conspiracy charge under § 371, however, we find that his altered business practices with respect to the stolen vehicles permitted the jury to reach the reasonable inference that Nwabardi knowingly participated in the criminal scheme. See Bieganowski, 313 F.3d at 277; Sutherland, 656 F.2d at 1187-88; United States v. Cauble, 706 F.2d 1322, 1339 (5th Cir. 1983) (affirming a conviction for aiding and abetting a drug smuggling conspiracy where circumstantial evidence showed "significant changes in business practices" during the years in which the illegal acts occurred).

Nwabardi also contends that the lapse of time between the actual theft of the vehicles and his involvement somehow supports his argument that he was unaware that the vehicles were stolen. We find no merit in this argument. The evidence was sufficient for a jury to reasonably infer that Nwabardi knew the vehicles were stolen when he performed the title work.

### III. CONCLUSION

For the foregoing reasons, we find no reason to disturb the jury's verdict with respect to Nwabardi's role in this criminal conspiracy. Therefore, we AFFIRM the conviction and sentence of Nwabardi.